Judge Nicholas
delivered the Opinion of the Court.
Simeon Yéwell filed his bill in chancery against Keas, to foreclose a mortgage on two slaves; and upon an alleged apprehension, that they would be carried out of the state, obtained an order requiring the. surrender of their possession, unless Keas should give surety for their *249 forthcoming to answer the decree of the court. Under this order, Keas gave bond, with surety, conditioned to have the slaves forthcoming, to answer any decree that may be'rendered in said case.
Under the final decree, one of the slaves was produced and sold, but the other not being forthcoming, this suit was brought by Yewell, on the bond against Keas and his. sureties; and he having obtained verdict and judgment against them, they prosecute this writ of error.
The defendants filed three special pleas; demurrers to which were sustained. But they need not be particularly noticed, as they were waived by the filing of another plea, which was also demurred to, and the demurrer sustained. This plea states, in substance, that, notwithstanding the utmost care and diligence of Keas, the slave had run away from him, between the execution of the bond and the rendition of the decree, and notwithstanding the utmost diligence had been used by him, he was unable to reclaim her, and therefore, she had not been forthcoming to answer the decree.
Tested by the literal import of the covenant, there could be little dispute that this-plea furnishes no sufficient excuse for not having the slave to surrender in obedience to the decree. Her running away was not guarded against by any stipulation in the covenant, nor is it, properly speaking, that description of casualty which could be termed inevitable, so as to relieve the parties from the effect of their covenant by the principles of the common law. But still, in our estimation, it constitutes a valid defence to the action. . The covenant must be treated and construed, with an eye to the subject matter about which it was entered into. The apprehension and the complaint of Yewell was, that Keas would remove the slave from the state before he could, by decree, subject her to the satisfaction of his demand. He made no complaint that the slave would run away, or that there was any danger of her absconding, unless she was placed under restraints such as masters do not ordinarily subject their slaves to. The purpose of the restraining order was to secure him against *250 the acts of Keas, and not of the slave herself. The or» der required Keas to give bond with security for her forthcoming, or that the sheriff should take her and deliver her into the possession of Yewell. 'Suppose that Yewell had thus become possessed of her, and without any fault on his part, the slave had absconded from him, so as not to be retaken : would he have been responsible to Keas for her value ? We conceive not. He would only have been .responsible for reasonable diligence in taking care of her. If this be so, and he would have incurred no responsibility by reason of his having taken her into his possession, it would seem to be peculiarly rigorous if the law were to visit such responsibility on the sureties of Keas, for a like casualty.
Where a mortgagor, in obedieiice to ¡morder of court, ILveSthemortgaged property forthcoming, to answer the decree — (paste 248-9) — the measure of damages, in an action on the bond, is the amount of the decree, if that is less than the value of the property ; otherwise, the value of the property. " -
The casualty by which the slave was lost, is a peril incident to the very nature of such property ; and therefore in contracts or covenants concerning such property, that peril should never be presumed to have been intended to be guarded against, unless so expressly stipulated. It has accordingly been held by the court of appeals of Virginia, and by this court, that the hirer of a slave was excused, by the fact of the slave having run away without his fault — from his covenant to return the slave at the- end of the year. Singleton vs. Carroll, 6 J. J. Mar. 528. The covenant of the hirer in that case, was as express, unambiguous and unconditional, as that of the parties here. The same principle that exempted the hirer from responsibility there, must relieve the obligors in this bond, also. The principle is, as laid down in that casé, that the loss is not to be considered as provided against by a general covenant, and its happening, therefore, presents the same excuse for non-performance, that the death of the slave would have done. We therefore think the court erred in sustaining the demurrer to this plea.
We find no other question in the record, which the ^ec^s’on "Pon this plea, will not meet and point out on the return of the cause; nor do any of the various alleged errors need particular notice. It may be well, *251 however, on another trial, for the court to qualify the instruction it gave to the jury, that the measure of recovery was the value of the slave, with a proviso, that the value does not exceed the balance of the mortgage debt and costs of the chancery suit. The court ought also to permit the plaintiff to amend his declaration, by inserting Simeon, instead of Jeremiah, as was asked by him.
Judgment reversed, with costs, and cause remanded for further proceedings consistent herewith.