REPLEVIN.

*Case* 35.

January 8.

Case stated.

## Scott, &c. *vs* Hughes.

APPEAL FROM THE UNION CIRCUIT.

*Pleading. Practice. Slaves. Replevin.*

JUDGE BRECK delivered the opinion of the Court.

THE appellants sued the appellee in replevin, for a female slave by the name of Ann, and her three children. The jury found a verdict for the defendant, and judgment thereon having been rendered, and for a return of the slaves, the plaintiffs have brought the case to this Court for revision.

Numerous questions are presented by the assignment of errors. Those which arise upon the pleadings will be first examined.

The defendant filed three pleas. In the first he admits and justifies the taking, as Sheriff, in virtue of an execution against H. H. Floyd, whose property he avers the slaves to have been at the time of the taking, and subject to the execution.

In the second plea, he also justifies the caption as Sheriff, in virtue of an attachment against Floyd, and avers that the slaves were his property, and that the attachment was at the time of the taking, in full force.

The third plea alleges the slaves to have been the property of H. H. Floyd, and not the slaves of the plaintiffs.

The plaintiffs replied to the first plea, that the slaves were not the slaves of Floyd, but were the slaves of the plaintiffs.

Demurrers to the second and third pleas were overruled, and the plaintiffs afterwards filed replications, traversing the allegations of property in Floyd, and affirming the slaves to be the slaves of the plaintiffs.

The sufficiency of these pleas, however, was subsequently brought up by the defendant's demurrer *to a* portion of the pleadings, so that it becomes necessary

Scott, &c.
vs
Hughes,

to determine whether the plaintiffs' demurrers were properly overruled.

Both pleas, we think, are good. It is true the second does not aver that the attachment or injunction was still pending and in full force. But it avers that it was in full force at the time of the taking, which was the same taking complained of. It showed, therefore, with the averment, that the slaves were the property of Floyd, a sufficient justification for the taking.

A plea by a Sheriff to an action of replevin, averring that the property was taken by a chancery attachment, that it was the property of the defendant to said attachment, and that the suit was pending when it was taken, is a good plea.

The third plea, were it a mere plea of property in a stranger, was also allowable according to the well settled doctrine: (1 *Chitty's Pleadings,* 471;) *Rogers* vs *Arnold,* (12 *Wendel,* 30;) *Tuley* vs *Mauzey,* (4 *B. Monroe,* 5,) and authorities there cited. It is said to be a good plea, because the effect of it is to disaffirm and deny property in the plaintiff. But in this case the plea not only alleges the property to be in a stranger, but it expressly traverses the allegation in the declaration that the slaves were the property of the plaintiffs.

A plea alleging property in a stranger is a good plea in replevin. (1 *Chitty,* 471; 12 *Wendell,* 30; 4 *B. Monroe,* 5.)

The objection to the defendant's filing more than one plea would not have been available, had the objection been made at the proper time. The act of 1842, provides that the defendant, as well as the plaintiff in replevin, may plead as many several matters, either of law or fact, as he or she may deem necessary for his or her defence.

The statute of 1842 admits of the filing of as many pleas in replevin, either of law or fact, as defendant, as well as plaintiff, may think necessary for his or her defence. (3 *Stat. Law,* 507.)

Our conclusion then, is that the demurrers to the second and third pleas, were properly overruled.

On the trial of the cause, after the jury were sworn, the plaintiffs moved for leave to file an additional plea or replication—the plea alleging that since the last preceding term of the Court, one of the slaves in contest had died, notwithstanding the utmost care and diligence had been used by the plaintiffs in regard to him, and that as to such slave, the defendant was not entitled to a judgment of return.

Whether the Court was right in refusing permission to file this plea, is the next question for consideration.

Were the only objection to filing it the time when it was offered, we are inclined to the opinion, under the circumstances, the objection should not have been sus-

Where a fact occurred after the making up issues upon pleadings

Scott, &c.
*vs*
Hughes.

*filed, of which
counsel was not
informed until
after the jury
were sworn, if it
were material,
the court in its
discretion might
admit it to be
plead or replied
and brought into
litigation, and,
if necessary, to
the ends of jus-
tice, set aside
the order of hear-
ing and continue
the case.*

tained. It appeared the plaintiffs were not aware of the materiality of the fact of the death of the slave, and that their counsel was not advised of it till the moment when the plea was offered. It would have been in the discretion of the Court, if the defendant was taken by surprise by the plea, to have set aside the order of hearing, and continued the cause.

But waiving any decision of the objection as to the time when the plea was offered, we are of opinion the Court was right in refusing permission to file it, upon the ground that it was not a good plea. It involves a question, which, we apprehend, has never been directly settled by this Court. In cases, however, strikingly analogous to this, the question, we think, has been virtually decided.

*A defendant who
detains a slave
after the institu-
tion of an action
of detinue or re-
plevin, is respon-
sible for his val-
ue if he die after
suit brought.—
(Gentry vs Bar-
nett, 6 Monroe,
113.)*

*Carrol* vs *Early*, (4 *Bibb*, 270,) was an action of detinue. In that case the slave died after the commencement of the suit, and without the fault of the defendant. The Court held, that although the defendant might have acquired the possession of the slave rightfully, yet his detention of him after the action commenced, was wrongful, and that he who wrongfully detains the property of another, does it at his own peril, and will be responsible to the proprietor, though the property should be destroyed by accident, or taken from him by violence. And in support of this proposition, the Court refers to the principle, that all bailees are responsible for losses by casualty or violence after their refusal to return the things bailed, on a lawful demand. (*Jones' Law of Bailment*, 94;) *Gentry* vs *Barnett*; (6 *Monroe*, 113,) was an action by the defendant in replevin, upon the replevin bond for a failure to return one of the slaves which had been taken in replevin, and for which the defendant had obtained a judgment of return. The defendant plead in bar of the action, that the slave had died before the judgment for return, and without fault on his part.

The Court held the plea to be insufficient, and referring to the case of *Carrol* vs *Early*, (*supra*,) say it is hard to conceive of a reason supporting the decision in that case, which would not equally apply to the death

of a slave, pending the action of replevin. That in the one case the defendant is charged on account of his wrong only; while in the other, he is not only guilty of the same wrong, but has expressly stipulated in his bond for a restoration.

The Court further say, that if the death of the slave could have been rendered available at all for the relief of the defendant, which according to the decision of *Carrol* vs *Early*, was very problematical, it would have been by pleading it in avoidance of the judgment *de retorno habendo*.

In the case before us, the death was so plead, but according to the principle upon which the case of Carrol and Early rests, and the reasoning in that case, and also in Gentry and Barnett, it seems to us the plea cannot be sustained.

In the former case the party was charged on account of a wrongful detention. In the latter, the Court say he was guilty of the same wrong. The wrong consisted in the latter case in taking and detaining the slave, under color of law, without a valid claim. In each case he acts at his peril. In detinue, if he fails to establish his right, the detention is wrongful. So in replevin, both the taking and detention are in effect wrongful, although by authority of law, if the claim of the plaintiff is groundless and invalid. We are unable to perceive any good reason why a party, who of his own mere will, avails himself of the authority of law to seize and detain the property of another, should not be held to the same responsibility as a bailee, who comes rightfully into possession, but wrongfully detains. Nor do we perceive any legal obstacle in enforcing the same rule, or in holding each to the same strict accountability.

It is true, in the case of Carrol and Early, the Court say, were the recovery of the specific thing the absolute and sole object of the action of detinue, the destruction or annihilation of the thing would necessarily defeat the action; but as the object was to recover the thing if to be had, and if not, its alternate value, the action would not be defeated by its destruction, unless

under circumstances that would excuse the defendant from being responsible for its value.

In replevin, both parties are actors or plaintiffs. The defendant in seeking a judgment for the return of the property—and if he fails upon the judgment to obtain the property, he can resort to his action upon the bond, and recover the value. And in case the verdict is for the defendant, if the property had been taken by execution, as in this case, he may, in virtue of our statutes, at his election, take a judgment for the amount of the execution. It seems to us, therefore, that the attitude of the defendant in replevin does not vary materially from that of the plaintiff in detinue. In each case, if the property cannot be had, the party may recover the value. The fact that in replevin the defendant must look to the bond for the failure to obtain the specific thing upon the judgment, does not materially vary the case. Each case virtually rests upon the same principle.

The cases to which we have been referred, where the party in possession has not been held responsible for the death or escape of the slave, are not analogous to the action of replevin. The case of *Keas, &c.* vs *Yewell,* (2 *Dana,* 249,) and other like cases, differ in this essential particular, that the party was guilty of no wrong in either obtaining or retaining the possession. Our conclusion then is, that the plea or replication in question was insufficient, and that the Court was right in rejecting it.

In reference to other material questions presented in the case, it will be necessary to advert briefly to the facts. It appears that in 1839, H. H. Floyd gave his daughter, Ann Scott, the slave Ann in contest—and with a view to enable him to equalize the distribution of his slaves among his children, he required her to pay him forty dollars, which was paid. Ann continued with Mrs. Scott about two years, when her father proposed a temporary exchange for his convenience, and accordingly sent her another servant and took home Ann, who continued in his possession the greater portion of the time, till David, the plaintiff in the execution under

which the slaves were taken by the Sheriff, obtained his judgment, which was in 1847. Ann, however, was during the time, claimed by Mrs. Scott, and her claim was recognized by her father.

The claim upon which David obtained his judgment against Floyd, originated after the gift to Mrs. Floyd, and after she had been two years in her possession.

At the time of the gift Mrs. Scott was a *feme covert*, the wife of Daniel Scott, and so continued until 1846, when her husband died, leaving a will, which was duly admitted to record, and Charles L. Scott and Joseph Buckman qualified as executors.

The testator, after making some specific devises to his wife and others, directed all the residue of his estate to be equally divided among his five children.

This action of replevin was brought by Ann Scott, the widow, and four of her children, named in the will, and the husband of the fifth, and among them are the two executors.

The execution and attachment relied upon by the defendant, were also in evidence before the jury. The Court below overruled the sixteen instructions moved by the defendant, and the twenty four moved by the plaintiff, and instructed the jury:

"That the plaintiffs must prove joint property in themselves in the slaves, and a right to immediate possession to entitle them to recover.

"But if by permitting the slaves to return to H. H. Floyd, the defendant in the execution, and to remain in his possession from 1841 until the execution was levied on them in 1847, he exercising acts of ownership over them, it affords *prima facie* evidence that they were the property of H. H. Floyd." *Instructions of the court.*

In view of the pleadings and facts, the first proposition, we think, is applicable to the case, and contains the law.

All the pleas in effect, put in issue property in the plaintiff. The plea of property in a stranger is said to be but a disaffirmance of property in the plaintiff.

But this Court held in *Hobbs* vs *Myers*, (1 *B. Monroe*, 241,) that where the defendant plead property in a *A plea of property in a stran-*

Scott, &c.
vs
Hughes. &c.

ger on replevin throws the *onus* upon the party pleading it, (1 *B. Monroe*, 241,) where the taking is alleged to be from plaintiff; but if the plea also traverse the allegation of property in plaintiff, plaintiff is bound to prove property in himself as alleged.

stranger and justified the caption, that the *onus probandi* was devolved upon him. That he admitted he had taken the property from the plaintiff's possession, and although possession alone may be insufficient for maintaining such an action, it is *prima facie* evidence of such a right as will sustain it—and in the absence of any proof, the plaintiff was at least entitled to his costs.

But in the case before us, although each plea admits the taking, still there is no admission that the slaves were taken from the possession of the plaintiff, as they do not allege in their declaration that they were in, or were taken from their possession. The allegation is, that the defendant took the slaves of the plaintiff, being in a certain house inhabited and occupied by one George R. Ellis. There is, therefore, in this case, no such *prima facie* evidence of a right in the plaintiffs to sustain the action, which the possession of the slaves at the time of the taking would afford.

Slaves given to the wife during coverture vest absolutely in the husband.

And as the pleas not only aver property in a stranger, but expressly disaffirm and traverse property in the plaintiffs, it seems to us the plaintiffs could not recover without proving in themselves such a joint property or interest as would entitle them to maintain the action. But they not only wholly failed to establish such property or interest, but the contrary very clearly appears. Ann Scott, in no view of the case, had any interest in the slaves, and there is no contrariety in the testimony upon this point. If the slave was given to her, as contended, by her father, she vested absolutely in her husband, and she acquired no interest in her under his will or otherwise, so far as appears. If the slave was not thus given, then there is no proof whatever, of any property or interest in the slaves, or any of them, in any of the plaintiffs.

It results that the plaintiffs were not entitled to recover, and that the jury were right in finding for the defendant.

It remains to enquire whether the defendant was entitled to a judgment of return.

Upon a finding for defendant on

The defendant in each of his pleas prays for a return of the slaves, and the doctrine seems to be that a ver-

dict for him upon either of the pleas, even regarding the second and third as mere pleas of property in a stranger, would entitle him to such a judgment.

This principle is sustained, in addition to the authorities already cited, by *Harrison* vs *McIntosh*, (1 *Johnson's Rep.* 380; 2 *Lev.* 92,) and (1 *Salkeld*, 94.) It is upon the ground that such pleas necessarily involve the right of the plaintiff to maintain the action—and that a verdict for the defendant is equivalent to finding that the plaintiff had no such right, either by being the owner of the property or entitled to possession or dominion over it.

But independent of this view, the testimony conduced to show and authorized the jury to find that the slaves were subject to the execution under which they were taken by the defendant.

Conceding the gift from Floyd to his daughter, still the jury might well have found that it was not followed by such length of possession as would exempt it from his creditors. According to the construction given by this Court to the forty third section of the general statute concerning slaves, (2 *Stat. Law*, 1480,) a parol gift of a slave is not good against a creditor of the donor, before the donee has been at least three years in possession: *Taylor* vs *Eubanks*, (3 *Marshall*, 242;) *Stone* vs *Hedges' Trustees*, (6 *B. Monroe*, 169.)

The second instruction which the Court gave the jury, seems to assume that the slaves had continued in possession of Floyd from 1841 till 1847, and although the testimony conduced strongly to establish that fact, yet the question should have been left to the jury. But we think the jury could not have been misled by the instruction, and being satisfied the finding for the defendant, in view of the testimony, was right, and that the jury could not, for want of a joint interest in the plaintiffs, have found otherwise, we are not, in any view of the instruction, disposed to disturb the judgment.

The jury found the defendant not guilty. The verdict is certainly informal, yet we think it should be construed as finding all the facts necessary to entitle the defendant to the judgment.

The numerous other questions raised by the plaintiffs during the progress of the trial, we deem it unnecessary to notice, as in no view of the case, can they affect the result.

Wherefore, the judgment is affirmed.

*E. H. Hopkins* for appellant; *J. & W. L. Harlan* for appellees.