Mr. Justice W alker delivered the opinion of the Court. Alston hired to Balls a negro boy for twelve months, and Balls with Adams as his security, entered into a written agreement with Alston to pay for the services of the boy and return him to Alston at the end of the year. Upon this contract, Alston sued Balls and Adams, and alleged, as a breach thereof, the non-payment of the hire and the failure to return the slave. The defence interposed (and out of which the only question of importance arises) was, that the slave, without the fault of the hirer, had absconded to parts unknown, so that he could not deliver him to the owner. In the absence of a special contract to return the slave, the defence might have prevailed, but where the parties contract to do an act which it is lawful and possible for them to perform at the time the contract is made, nothing but the act of God or the public enemy of the country will excuse its performance. Thus, it has been held, that if a party covenant to do an act, nothing short of showing that it cannot, by any means be done, will relieve him from his obligation. Beebe v. Johnson, 19 Wend. 500. Where one incurs an obligation by his own act, he will be bound to the extent of his engagement, and will not be excused for its non-performance by accident from inevitable necessity. Clancy v. Overman, 1 Dev. & Bat. 402. A party who covenants to perform acts not on their face impossible, illegal or immoral, and not shown to have become so, will be held to performance, notwithstanding the difficulty attending those acts, or the hardships of the particular ease. Stone v. Dennis, 3 Porter 231. And Chief Justice Maesiiall, in the case of Pollard v. Shaaffer, 1 Dallas 210, where the British army, a public enemy, had destroyed a tenement which the lessee covenanted to keep in repair, held the tenant to be excused from keeping his covenant, saying^ “That a covenant to do this against an act of God, or an enemy, ought to be so specific and express, and so clear, that no other meaning could be put upon it.” There can be no doubt of the correctness of the principle settled in these cases. Indeed, their correctness, even by the decisions that have, by construction extended the defence, so as to embrace the case under consideration, seems to be conceded. In the case of Singleton v. Carroll et al., 6 J. J. Mar. 529, which is mainly relied upon as a case in every respect in point, after substantially recognizing the rule as we have stated it above, the Court said, “The true ground however, generally, upon which, in snch cases, to rest the defence of the covenanter, is that the loss is not to be considered as provided against by a general covenant:” and the case of Pollard v. Shaaffer, decided by Chief Justich Maeshall, is cited; and 2 Selwin Nisi Prius 412, is also cited; in each of which, it was the act of an alien enemy that excused the covenanter from the performance of his covenant, and not the mere absconding of a slave, or the casual loss of property. In the case of Keas v. Yewell, 2 Dana 249, the other Kentucky case cited by the counsel, and relied upon as in point, the Court say, “ Tested by the literal import of the covenant, there could be but little dispute that this plea furnishes no sufficient excuse for not having the slave to surrender in obedience to the decree. Her running away was not guarded against by any stipulation in the covenant, nor is improperly speaking, that description of casualty which would be termed inevitable, so as to relieve the parties from the effect of their covenant by the principles of the common law. But still, in our estimation, it constitutes a valid defence to the action: ” and the reason assigned by the Court for so holding it a valid defence is, in their own language, “That the casualty by which the slave was lost, is a peril incident to the nature of such property, and therefore, in contracts or covenants concerning such property, that peril should ever be presumed to have been intended to be guarded against, unless so expressly stipulated,” To sustain this course of reasoning, the Kentucky courts cite no authority whatever, where a similar question has occurred. The case in 5 Littell was a case in which the hirer was excused from paying the hire of a slave that died during the time for which he was hired, without the fault of the hirer: and the case in 5 Littell was decided on the authority of the case of Harris v. Nicholas, 5 Wunf. 487, which was also a case where the excuse for not keeping the covenant was the death of the slave. The covenanters were excused from performing their covenants, in each of these cases, upon the ground that they were prevented by the act of God, against which, no man is presumed to covenant, because no human agency can arrest it. Not so in the case before us. It is true that there was a risk to run. The slave might abscond. And so, upon a covenant to deliver stock, or to pasture a horse and return him, the cattle or the horse might escape and never be reclaimed. All these casualties are incident to such undertakings; and if the party contracting was unwilling to run the risk or hazard attending them, he should have excepted them in his contract. This covenant is a security to the owner of the slave for his property, and may have materially influenced him in making the hire upon the terms agreed upon. We cannot say how this was, but find an unqualified covenant to return the slave. If the terms are responsible, they are such as the party voluntarily assumed, or if it be doubtful whether he intended to assume this much, the well established rule of construction is, that it shall be construed most strongly against the party making it. Another rule, equally clear is, that the contract should be so construed, if possible, as to give force and effect to all of its parts, so that no part of it shall be rejected as useless or unmeaning, if they can be reconciled so as to give each effect and force. It will at once be seen, that under the construction given to this clause in the covenant, it is rendered wholly unmeaning and nugatory, for the obligation of the law, in the absence of any contract to return the slave, impose obligations upon the hirer precisely similar, and to the same extent that the Kentucky and Tennessee courts construe this contract as imposing. So far from this, the parties are presumed to know the law; and unless they intended to bind the hirer beyond his mere legal liability, it is to be presumed they would have made no covenant on the subject. The Kentucky court, and also the Tennnssee court, have cited 5 Munf., as a leading authority for the decisions they have made, and have fallen into the same train of reasoning, and have wholly overlooked, and, in effect, discarded the several familiar and well established rules for construing contracts to which we have referred. The question is one of interest in a State like ours, where slaves are held as property, and contracts of hire are of common occurrence. The covenant to return the slave to the owner when his term of service has expired, is an important feature in the contract: and when it is considered that he at once parts with the possession and control of his slave, and confides him to the care of one who, for the time being, absolutely commands his time and directs his movements, it is but reasonable to suppose that he intended to impose an obligation upon the hirer to return him at the expiration of the time, whilst, on the other hand, the hirer, aware of the risk he might run by thus covenanting, if he had doubts upon the subject, could either except this contingency out of his covenant, or modify the contract in other respects to suit himself before entering into it. In the case before us, we find an unqualified undertaking on the part of the hirer to return the slave to the owner at the end of the year. These terms, onerous or not, were voluntarily assumed by the hirer. It was a subject matter which the party is presumed to have been capable of performing, and which, at law, he is bound to perform unless excused from so doing by the apt of God or the public enemy of the country. The Circuit Court erred, therefore, in overruling the demurrer of the plaintiff to the third and fourth pleas of the defendant. And for this error, the judgment must be reversed, and the cause remanded, to be proceeded in according to law.