CHIEF JUSTICE WILLIAMS
delivered the opinion of toe court:
The appellants, as creditors of Brannon, sued out their separate attachments, which were levied upon a stallion; and Gordon, claiming said horse as his property, gave bond and security as provided in section 235, Civil Code, that he would perform the judgment of the court, else have the horse forthcoming, subject to the order of the court.
Gordon presented his petition claiming the horse, which claim was referred to a commissioner to ascertain and report the facts. The commissioner found the property subject to the attachments, and the court so adjudged, and ordered a rule against Gordon and his security to produce the horse; to which Gordon responded, that, *473 before the judgment, and without his fault, but by the act of God, the horse had died, and therefore he could not produce him.
Upon the trial of this response, the court held it sufficient, and discharged the rule, whether upon evidence does not appear; but we must presume that the court was satisfied of the matters alleged; therefore, we can .only adjudge upon this appeal as to the facts as averred.
Whether or not in such a covenant, not stipulating against inevitable casualties, the obligors can be relieved because of the death or other inevitable destruction of the property, has been a much mooted question among jurists, and much difference of opinion exists among courts. There is much reason to reject such an excuse by one presenting an unfounded claim, and thereby protracting the litigation until the casualty happens, which renders the attachment unavailing, unless the creditor is permitted to resort to the bond.
In 2 Story's Equity Jurisprudence, section 1307, it is said: “ But if the condition be possible at the time when it is made, and afterwards becomes impossible by the act of God, or of the law, or of the obligee, then the bond is saved, and the obligor is not bound to pay it; so, if the condition is in the disjunctive, and gives liberty to do one thing or another, at the election of the obligor, and both are possible at the time, but one part afterwards, by the act of God, or of the obligee, becomes impossible, the obligation is saved;” buc in a note to this section it is said there are many exceptions to this general rule, so that it is far from being universally true, and even contra authorities are cited.
As far back as the year 1820, in Holland vs. Bouldin (4 Mon., 147), this court held, upon a recognizance of bail, which Bouldin undertook for Fowler, “ that he should *474 pay and satisfy the condemnation of the court, or surrender the body of the said Fowler to prison in execution thereof; ” and the Legislature subsequently, and before judgment, abolished imprisonment for debt, so that Fowler’s body could not be surrendered or taken on ca. sa.; “ that as one of the alternative conditions had become illegal or impossible by act of law, so the whole obligation was discharged” — quoting Shepherd’s Touchstone, chapter 21, section 2, 372, also 393; 5 Coke, 22, Loughter’s case; 4 Coke, 52, Rawlings’ case.
In Keas et al. vs. Yewel (2 Dana, 249), which was substantially an attachment out of chancery to prevent the running off by Keas slaves he had mortgaged to Yewel, whereupon Keas gave bond with security to have the slaves forthcoming to answer the decree which should be made, this court held, that the running away of the slaves without the negligence of the obligors, so that they could not be produced, was a sufficient excuse for nonperformance.
And in Loughlin vs. Ferguson and others (6 Dana, 121—2), which was an injunction against a forthcoming bond upon various grounds, this court said: “ The death of the negro child, which occurred before the appointed day of delivery, was, of course, a sufficient excuse for its non-delivery.”
But in none of these cases did a party,- setting up a pretended claim to the property, protract the litigation by his unfounded title until it was lost. In this case Gordon protracted the litigation from September, 1866, until the commissioner reported, January 31, 1868, and nothing therein said of the horse’s death; judgment on Gordon’s litigation, however, was not rendered until April 17, 1868, when, on a subsequent rule, he responded, as an excuse, the horse’s decease. Brannon set up *475 no defense to the debts sued on, but did controvert th'e cause of attachment. But for Gordon’s claim and the bond he gave, the horse would doubtless have been sold and paid the debts.
The great question is to determine whether this stands on a different footing from the ordinary forthcoming and delivery bonds usually executed by litigant parties to a suit, merely to retain possession whilst the litigation is progressing, and until final judgment, and which does not usually postpone the creditor nor protract the litigation, nor necessarily do so at all.
A defending litigant usually has the legal right to retain possession until judgment and execution ; and a bond to have the property forthcoming, to abide the judgment, does his adversary no legal injury. This, however, is not the case when a third party obtrudes as claimant and seeks possession of the property until his claim is adjudicated; for this increases the expense,'mutiplies, protracts, and, -when the claim is not bona fide, vexes the litigation, and is injurious to the plaintiff, and, therefore, does not come within the'spirit of reason of the rule.
In section 106- (1 Story’s Equity Jurisprudence, 102) the general proposition is laid down, that no relief will be-granted on account of accident, where the other party stands on an equal equity and is entitled to equal proteo^ tion.
And in section 108 it is said, the grounds of interference in such cases resolve themselves into the following : That the party seeking relief has a clear right, which cannot otherwise be enforced in a suitable manner, or that he will be subject to an unjustifiable loss without any blame or misconduct on his own pai’t; or that he has a superior equity to the party from whom he seeks relief. .
*476 And in Harmony vs. Bingham (2 Kernan N. Y. R., 115), which was a suit by a freighter against a common carrier for not delivering within the agreed time, one of the excuses being an inevitable casualty by the breaking the Pennsylvania canal, Ruggles, Justice, said the delay in not repairing the canal does not excuse the defendants for not delivering the goods in time. The covenant was to deliver the goods within twenty-six days from the first of April. No provision was made by which they were to be discharged from the obligation upon any contingency whatever. It is a well-settled rule of law, that where a party, by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not expressly provide against such contingencies, and exempt himself from responsibility in certain events; and in such an absolute and general contract, inevitable accident will not excuse the performance— citing Chitty on Contracts, 734; Headley vs. Clark, 8 T. R., 259; Bebee vs. Johnson, 19 Wend., 500; 4 Wheat., 216; 6 T. R., 750; Angell on Carriers, sec. 294.
And in Wilson vs. Knott (3 Hump. Tenn., 473) the supreme court of Tennessee held, that when, by contract, a house-builder undertook to complete a house for another, at a specified rate, but after much work, and before completed, the house was destroyed by fire, the owner was responsible to the undertaker for the work done, because the work was his as it was done, and he not having provided against responsibility because of accident, was liable.
These were cases of private contract, uncontrolled by legal rules or legal forms as to the particular covenant entered into, and hence a possible distinction; but still these manifest various exceptions to the general rule laid down, that a subsequent event, making the condition *477 impossible, shall excuse the performance. The claimant in this case has been adjudged to be a wrong-doer — in other words, the court has adjudged his claim to be unfounded, and his litigation to be false. Shall he now be heard to say, “ True, I have detained this horse wrongfully two years, but now he is dead I can’t return him, therefore I ask to be exonerated from my covenant to do so, or to pay the judgment rendered ?” The terms of the covenant are unconditionally to return the horse or pay his value, or abide the judgment of the court. Shall the law incorporate other terms for the bénefí't of the wrongdoer? The rules have not been so far extended either at law or in equity ; we see no reason to do so; neither justice nor public policy demands this.
In Carrol vs. Early (4 Bibb, 270) this court held a defendant in detinue responsible for a slave wrongfully held by him, which died pending the action.
And in Gentry vs. Burnett (6 J. J. Mar., 113), upon a bond executed by the plaintiff to get possession of slaves in an action of replevin, one of which died during the litigation, and there being a judgment of return, this court held, that as he was a bailee in his own wrong, and having obtained the possession under a false claim, that he could not set up the death of the slave as an excuse for not returning, however blameless he might have been of the casualty.
The claimant’s bond, and proceedings under section 235, Civil Code, bears a striking analogy to the ancient action of replevin — indeed, may be regarded as a substitute for it. But whether so or not, the rights and liabilities of the parties are almost identical.
In Scott vs. Hughes (9 B. Mon., 104) the plaintiff in replevin attempted to defeat the judgment of return by alleging the death of one of the slaves subsequent to the *478 litigation, without his fault; but this court disallowed the plea, because his possession was wrongful, as was established by finding his claim false, and both his possession and litigation injurious to his adversary; and this was regarded as the destinctive feature between this and the case of Keas, &c., vs. Yewel (2 Dana, 249).
These cases clearly distinguish between a bond rightfully given, to retain possession until the litigation is ended, and one given wrongfully, to get a possession the party is not legally entitled to. In the latter class of cases the party is to be regarded as a bailee in bis own wrong, liable for all accidents, and taking all the hazards ; this being very different from a case wherein one of two equally innocent parties must suffer by an inevitable casualty.