HENRY M. WHITEHEAD, Respondent, *against* CORNELIUS J. VANDERBILT, Appellant.

(Decided April 4th, 1881.)

Upon the loan of a mare by the plaintiff to the defendant, in May, 1878, the defendant agreed to return her to the plaintiff in good condition in the fall of that year, unless he should then desire to purchase her, in which case, or in the event of his failure to return her in good condition, by reason of accident or otherwise, he should pay the plaintiff a specified sum, her agreed value, and her market value in fact. The mare died in July or August of that year, while in the possession of defendant. *Held*, that as the death of the mare did not appear to have been due to any act or neglect of the defendant, he was discharged from liability either as bailee or upon his special contract.

APPEAL from a judgment of this court entered upon the report of a referee.

The facts are stated in the opinions.

*Lord & Lord*, for appellant.

*H. M. Whitehead*, for respondent.

J. F. DALY, J.—The referee found as fact : That at the city of New York, in or about the month of May, 1878, the plaintiff loaned to the defendant, at the defendant's request, a bay mare, on the condition and agreement on the part of the defendant that he would return the said bay mare to the plaintiff in good condition in the fall of that year, unless he should then desire to purchase her—in which case, or in the event of his failure to return her in good condition, by reason of accident or otherwise, he should pay the plaintiff $2,500, her agreed value, and her market value in fact. That the mare thereafter, and in the month of July or August, 1878, sickened and died at Croton, New York, while still in the possession and control of the defendant, which rendered it impossible to return her as agreed. That the defendant has never paid

Whitehead *v.* Vanderbilt.

the plaintiff any sum whatever for said mare. And the referee found as conclusions of law: That there is due from the defendant to the plaintiff $2,500, with interest thereon from the first day of January, 1879, and he should have judgment therefor and also for the costs of this action.

On the facts found the judgment should have been for defendant. The defendant was bailee of the mare, with the privilege of purchasing her at the price of $2,500, and with the obligation to return her in good condition, in default of which he was also to pay $2,500 to plaintiff. He was not to be excused from returning her in good condition by reason of accident or otherwise. In the agreement thus made between the parties there was no provision for the contingency which actually occurred—the death of the mare before the time at which she was to be returned to her owner. The defendant had the whole period up to the fall to comply with his agreement to return her in good condition ; he was prevented from doing so by her death in July or August; there is no finding and no presumption that her death was owing to his act or neglect ; the performance of his contract became impossible by the act of God. Under such circumstances he is discharged from liability either as bailee or upon his special contract (*Carpenter* v. *Stevens*, 12 Wend. 589 ; *Hyland* v. *Paul*, 33 Barb. 241; *Worth* v. *Edmonds*, 52 Barb. 40 ; *Wolfe* v. *Howes*, 20 N. Y. 197). The contract to return the mare, or upon failure to return her in good condition to pay $2,500, does not make the defendant liable, as on special contract, in case of her death. In *McEvers* v. *Steamboat Sangamon* (22 Mo. 187), which was an action to recover the value of a barge which plaintiff hired to defendant at $8 per day, the defendant agreeing to return her at any time and deliver her in *good condition*, the usual wear and tear excepted, and defendant answered that the barge had been destroyed by ice in the Mississippi River without any fault on defendant's part, the Supreme Court of Missouri reversed a judgment in favor of plaintiff, and Judge LARNED, in his opinion, said: "If there had been no obligation on the boat for the return of the barge other than what the law implied upon the bailment, from the

transaction itself, this defense, it is admitted, would have been sufficient. But it is insisted that here the party imposed the duty upon himself and therefore took the risk of such casualties; the distinction being between a duty imposed by law and one imposed by the parties themselves." . . " The question here, then, is, was this risk within the engagement of the defendant, so that no matter how the loss occurred, the party is bound; and we think it was not. Here is a general undertaking to return the property in good order, and it has perished without any fault on the part of the defendant, by a natural force that could not be resisted, and we are of opinion that an undertaking to assume such a risk ought to be special and express, and so clear as not to admit of any other construction."

In *Keas* v. *Yewell* (2 Dana, 249), where the action was on a bond to have two slaves forthcoming to answer any decree in a foreclosure of a mortgage upon them, it was set up in defense that one of the slaves had run away. Plaintiff had judgment, but it was reversed, the court saying: " The casualty by which the slave was lost is a peril incident to the very nature of such property, and therefore in contracts and covenants concerning such property that peril should never be presumed to have been intended to be guarded against unless so expressly stipulated."

In this case the death of the animal is a peril incident to such property, and if defendant is to be held to the onerous responsibility of that risk, his obligation to do so must be express, it cannot be implied. His agreement here was to return the mare in good condition or to pay $2,500. As his obligation goes to the *condition* of the animal at the time fixed for its return, the parties plainly contemplated her being in existence at that time, and they abstained from making provision in case of her death. It was also plain that the continued existence of the subject was essential to the performance of the contract, and if at the time fixed performance became impossible by the destruction of the thing without the fault of the party sought to be charged, he is not liable (Anson on Contracts, 315–16; 12 Central Law Journal, 9). The defend-

ant was not an insurer of the mare.   In *Field* v. *Brackett* (56 Me. 121), it was held that a naked verbal promise to return in good order and at a specified time does not import a contract on the part of the hirer of a chattel to insure it against loss occurring without his default.

Judgment should be reversed and a new trial ordered, costs to abide event.

CHARLES P. DALY, Chief Justice.—The testimony of Simmons was that the defendant agreed to be answerable in case of accident or death.   The plaintiff's evidence was that he instructed Simmons that the defendant might have the mare, assuming all risks.   The testimony of the defendant, however, was that he never stipulated or promised to pay for the mare if she died or any accident happened to her.   And the referee found, on this conflicting testimony, that the plaintiff's agreement was simply to return her in good condition, which, upon the referee's findings, we must assume was the agreement, and I concur with Judge DALY, that, this being the agreement, there could be no recovery for the price of the mare, as the referee found that she died from paralysis, not occasioned by any act or fault of the defendant.

VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, costs to abide event.