Hui,u, J.
This action is brought in this court to reverse the judgment ■of. the court of common pleas, which was against the plaintiff in error, who was also plaintiff below. The action was brought by the plaintiff to recover $2,000 which she claimed was due her upon a benefit certificate issued by and under the authority of the defendant. The defendant- is a corporation, organized under the laws of the state of Kentucky, as a fraternal beneficial association, having councils or branches in various parts of the United States, and one branch being known as St. Martin Branch No. 194, located at Toledo, Ohio. The petition sets forth that this last mentioned branch, on the 27th day of January, 1892, executed and delivered to one Mathias Dimmer, the father of the plaintiff, a benefit certificate for the sum of $2,000, thereby insuring the life of, Mathias Dimmer, according to the rules and ordinances of the association. And the petition further sets forth generally that he paid his dues and assessments up to the 6th day of December, 1894, and that he at that time paid the amount of his dues, but that said sum was returned and refunded to him on the following day, and that he had been ready, willing and able to pay all of his dues and assessments from that time on, if they had been received, but they were refused by the association, and on the 18th day of November, 1897, said Mathias Dimmer died, leaving the plaintiff still the beneficiary, as it is claimed, of' this certificate, and she asks judgment for the amount of said certificate, viz., $2,000, with interest. A copy of-the'certificate *368 is attached to the petition, and it recites among.other things, as follows: “The said Supreme Council Catholic Knights of America, agrees to pay to his daughter, Mary M. Dimmer, the beneficiary designated by said assured in his application, upon due proof of the death of said assured, he being in good standing in the order, the sum of two thousand dollars.”
The answer admits the issuing of the certificate, and sets up, in substance, that from and after the 6th day of December, 1894, no dues or assessments had been paid by said Mathias Dimmer; that, contrary to the rules of the association, he was in the habit of becoming intoxicated; that charges were made made against him in 1892, not, however, charging him with drunkenness, but with other things, and charges were again filed against him in 1894, and it is alleged that on the 6th day of December, 1894, he was expelled from the association, and that from that time on, he paid no dues or assessments; that he took no action in regard to the judgment of expulsion — made no objection to the action of the society in that behalf — and it is claimed that by reason of his conduct which led to his expulsion and by reason of the expulsion itself — he had ceased to be a member of the association and was not a member in good standing at the time of his death, and therefore, that his. beneficiary is not entitled to recover.
The case came on for trial before a court and jury, and at the conclusion of the evidence — evidence offered by both parties — the court, upon motion, instructed the jury to return a verdict in favor of the defendant, which was done and judgment afterwards entered thereon, and it is this judgment that is sought to be reversed.
It is claimed on the part of the plaintiff that Mathias Dimmer’s expulsion from the branch was wholly irregular, illegal and void, and therefore it had no effect upon his standing or rights in the association, or upon the fights of his beneficiary after his death.
It appears from the record that Dimmer became a member of the association and that this certificate was issued to him. in the year 1892. Prior to -that time — in 1891 — he had been adjudged a drunkard, by the probate court, and a guardian appointed for him pursuant to the statute. It does not appear *369 from the record whether the officers of the accociation or branch had any knowledge of this fact, or not at the time he was admitted; there was no evidence on that, one way or the other. At any rate, he joined the association and a certificate was issued to him on the 21st of January, 1892. In that year, when there was some question made about changing the beneficiary, the matter was put off — as the record shows— and an investigation of “brother Dimmer” — as he is called in the record —was ordered, as it was claimed that he was drinking, but nothing was done, so far as appears, upon the charge. In October, 1894, another charge was filed against him in substance to the effect that he was guilty of misconduct in certain things that he had said — charges which he had made in regard to officers of the branch. No notice was given to Dimmer of this charge. His guardian was a member of the branch — Mr. Kirschner, who attended the meetings regularly, and soon after Dimmer’s expulsion Mr. Kirschner was elected president of the branch. He was a prominent member of it on the 4th of December, after these charges were filed, on the 6th of December, 1894, and Dimmer was expelled. The minute of his expulsion is very brief; it simply states that Mathias Dimmer was expelled from the branch. It does not appear, and the record fails to show that any notice had been given to Dimmer of these charges. His guardian learned of his expulsion the next day, however, and very shortly thereafter, according to his guardian’s recollection, he notified Mr. Dimmer that he had been expelled. Although Dimmer was under guardianship, he was not insane or imbecile, but he was under guardianship on account of his habits of intoxication and his property and money were under the control of Mr. Kirschner, his guardian. Upon its coming to Dimmer’s knowledge that he had been expelled, he took no action whatever, himself personally or through his guardian, to secure a reinstatement; he took no appeal to the supreme council within thirty days, as was provided by the constitution and by-laws that any member might do for any grievance that he had. These dues which were paid December 6th, 1894, were returned the next day to his guardian, and the guardian took no action — paid no attention to the action of the branch, made no effort to pay any further dues after that *370 as long as he remained the guardian, made no offer to pay any assessments. The dues of the branch were fifty cents per month, and assessments were made from time to time as it was found necessary. A large number of assessments were made from the time of Dimmer’s alleged expulsion until his death, none of which were paid by him, and no offer made to pay. According to the pleadings and the evidence it seems that there were something like one hundred assessments made, amounting to about $135.00 during that period. Dimmer died on the 18th day of November, 1897, about two weeks less than three years after his expulsion. Mr. Kirschner’s guardianship terminated and he was discharged as guardian and Dimmer restored to his property October 1st, 1895, more than two years before his death. After the discharge of his guardian Dimmer came. into possession of his property and his money, but paid no attention to the action of the branch. He did nothing which would devolve upon him to do as a member of the society; he attended none of its meetings; he paid no monthly dues; he paid no assessments, he tendered none; he took no appeal from the action of the branch in expelling him in 1894, and, so far as his conduct shows, he was satisfied with the action of the organization and acquiesced therein, and had no desire to longer continue a member of the organization or to keep up his insurance and keep alive the benefit certificate which he had originally taken out. As regards his conduct he could not have disregarded the branch and its organization more if he had never been a member of the society. This conduct continued a little over two years after the guardianship was discharged when his death occurred — the period altogether from the time of his expulsion to his death was about three years.
It is contended by the defendant in error that although the expulsion of Dimmer was void and of no effect, yet that his conduct was such that he should be deemed in law to have acquiesced therein and held to have assented to the action of the lodge and’not to be entitled to any of the benefits of the organization — or, rather, that his beneficiary should not be so entitled.
The learned judge of the common pleas court was of the opinr *371 ion that Dimmer had acquiesced in this action of the branch for such a length of time — or, rather — had stood by for such a. length of time, that he must be deemed, as a matter of law, to have acquiesced in his expulsion, and, on that ground, directed a verdict. Several cases have been cited by counsel and it seems to be pretty well established by the authorities that the action of the council in expelling Dimmer, taken without notice to Dimmer and without any opportunity on his part to make a defense, was irregular and void. On the other hand, there are authorities to the effect that if a member of such an organization acquiesces in such an expulsion and makes no objection to such an action for such a length of time as a court would pronounce reasonable, that he should be deemed in law to have acquiesced in the expulsion, although it was void, and be adjudged no longer a member of such an organization. During the three years after Dimmer’s expulsion, he bore none of the burdens of the organization; while the members who were in good standing were paying their dues and paying their assessments, he was paying nothing. The council was purely a mutual or fraternal organization. The insurance dr benefits were made up entirely from assessments and dues of members that were paid in, in accordance with the constitution and by-laws of the organization. During th&t time he did nothing — offered to do nothing which devolved uoon him to do as a member of this organization. It is urged that he was not required to do a vain thing, as he had been expelled and as his last payment had been refunded — that he was not required to do more. If this be the rule, he might have stood idly by, without performing any of these duties, as suggested m argument, for thirty years, and still, upon his death, have been regarded as a member in good standing and his beneficiary entitled to profit by the certificate and be paid the amount named therein.
A case was cited below by the trial judge which seems to us to be in point, Glardon v. Supreme Lodge, etc., 50 Mo. App., 45, where it is said in the syllabus:
“Where the suspension of a member of a. mutual benefit society by his lodge is without jurisdiction — as where it takes place upon a charge upon which the lodge has no jurisdiction *372 t® try him — his expulsion is null and void, and, being so, it is not incumbent upon him to take steps to have it reversed in a higher judiciary order. But it is, nevertheless incumbent upon him to affirm or disaffirm the act of expulsion within some reasonable time and in some distinct manner under the circumstances; and where he takes no steps of any kind to secure his reinstatement, allows dues to remain unpaid which had accrued and were payable prior to the date of his expulsion, and neither tenders such dues nor any which accrue subsequently, he must be taken to have acquiesced in and consented to the sentence of expulsion, and no recovery can be had for benefits dependent upon his continued membership.”
In this case the party had acquiesced, had failed to perform any of his duties for a period of about fifteen months prior to his death, and the court say, on page 58:
“But the plaintiffs plead the void sentence of expulsion, accruing after these dues became payable, as a fact excusing him 'from making any tender of these or any subsequently accruing dues. If this position is tenable in a case where a subordinate lodge, or the officers of it, should make the mistake of expelling or suspending a member without jurisdiction, or ki violation of the laws of the order, the expelled or suspended member mighc rest indefinitely in his state of expulsion without paying subsequent dues, and, in the event of his death, the beneficiary in his certificate would be entitled to the sum therein assured, equally as though he had continued to pay all his dues down to the time of his death. This, as has been pointed out by the counsel for the defendant in this case, would place an expelled or suspended member, in the case of a void expulsion or suspension, in a better condition than a member in good standing who should pay his dues. It would put a premium upon his negligence in not taking means to exhaust his remedy of reinstatement within the order, in not appealing to the judicial courts after having so exhausted his remedy within the order, by mandamus, of otherwise, and at least in not giving some evidence of his continued dissent, by tendering his stated dues, or otherwise; and it would work an obvious injustice to the other members of the class to which he belongs, „who must contribute the sum named in his benefit certificate *373 in the event of his death. Such a certificate involves a scheme, of mutual insurance, under which the living members of a class contribute a certain sum to make up a fund for the benefit of the widow and children or other beneficiary of a deceased brother. There is an obvious injustice in requiring them to make a contribution to pay such a benefit to the family of a deceased member, who has for a long time ceased himself tc make any contribution on his part; and this is so, although he may have ceased in consequence of a void suspension of expulsion, which he has taken no steps to resist or disaffirm, but in which he has passively acquiesced. We take the just rule to be that, even in the case of a void expulsion or suspension, the expelled or suspended member is under a duty to his co-contributors to affirm or disaffirm the act of expulsion or suspension within a reasonable time, and in some distinct manner under the circumstances; and that where he takes no steps of any kind to secure his reinstatement, allows dues which had accrued and were payable prior to the date of his expulsion to remain unpaid, and neither tenders such dues nor any subsequently accruing dues, he must be taken to have acquiesced in and consented to the sentence of expulsion or suspension.”
We are of the opinion that the reasoning of this court is sound, and that even after a void expulsion a member of such an organization cannot stand by and neglect and refuse to perform any of his duties, for an unreasonably long time, and still sustain such standing in the order as to entitle his beneficiary to collect money due upon the certificate. There are many instances where a court may hold that a certain length of time is reasonable, or unreasonable. We think that this is such a case, and that the court below was right in holding that a period of three years was more than a reasonable time for Dimmer to determine what he wished to do and intended to do in regard to his expulsion. Where a period of time has elapsed in such a case, that all reasonable men would agree was n reasonable length of time, or an unreasonable length of time, the question then becomes a matter of law for determination by a court, as is often the case in the matter of notice. A case in 82 Ills. Appeals, 214, is also in point, tending to sustain rhe contention of defendant in error.
*374 The opinion of the learned judge before whom the case was tried in the common pleas, in passing upon the motion to direct a verdict for the defense, is to the point and covers the whole case, and it would have been sufficient for us to have referred to it as expressing our views. After reviewing the facts, the judge says:
“The significance of a failure in this case to offer to pay dues or assessments is simply, (there being no other evidence that he claimed any membership), that he did not consider himself a member. If, notwithstanding this expulsion or attempted expulsion, Dimmer had asked to be reinstated, or had manifested in any way a claim that he was a member, or a desire to remain a member — if he had done that, and they had refused, then there might be some force in the claim that it was unnecessary for him to tender dues and assessments, for the reason that in all probability the tender would be refused. But Dimmer said nothing, did nothing, for nearly three years during his lifetime, thus apparently acquiescing in the action of the lodge in expelling him. The officers of the association, the former members and existing members of the association, had the right to believe that he cared no longer to be a member, and was no longer a member.
If he had been wrongfully expelled he had his remedy, and not availing himself of that remedy, and not in any way dissenting from the action of the lodge, the conclusion to me is unavoidable that he consented to it, and that he was content that his relations with the association should be dissolved; and I have no doubt that that was his understanding. If he could stand by for three years without doing anything or saying anything, and still continue to be a member of that order, then he might stand by for thirty years, or any number of years, and claim the same right; there would be no limit to the time during which he might remain a member of the order, while during the same time the association and everybody connected with it properly understood that he was not a member.”
We are of the opinion that the court was warranted in holding as a matter of law that Dimmer had acquiesced in the action of the order; the court was not required to submit the question: *375 to the jury as to whether a reasonable length of time had expired, but was justified in holding, as it did hold, as a matter of law, that a more than reasonable length of time had expired since Dimmer’s expulsion, and that he having done nothing to disaffirm the same in the way of objection to that action, within that period of time, he must be deemed as a matter of law to have acquiesced therein and not to "be entitled, nor those who-came after him, to the benefits of the certificate.
Gilbert Harmon, for Plaintiff in Error.
Smith & Baker, for Defendant in Error.
For these reasons the judgment of the court of common pleas will be affirmed.

Note. G. Harmon, for Plaintiff in Error:
On October 7, 1891, the probate court adjudged Dimmer to be a drunkard, and appointed a guardian ,and he continued under guardianship until October, 1895. No charges were preferred against him, nor was he expelled for that cause, but for something "he should have said about somebody". The evidence shows that, continuously, after he went to the Sisters’ Hospital, up to the day of his death, he was of temperate habits. The defendant cannot complain of his habits in 1891, when it continued to receive from him dues anJ assessments for more than three years afterwards, down to December 6, 1894. Nat'l. Mut. Benefit Assn. v. Jones, 48 Ky., 110.
The beneficiary may maintain an action at law, on the certificate, though the defendant has refused to make an assessment. The defendant cannot take advantage of its own wrong, by refusing to make an assessment. Earnshaw v. Sun Mut. Aid Scy., 68 Md., 465; 6 Am. St., 460; Lake v. Minn. Masonic R. Assn., 61 Minn., 96; 52 Am. St., 538; The S. M. B. Assn. v. Swenson, 49 Kan., 499; Bentz v. N. W. Aid Assn., 40 Minn., 202.
Before a member of a mutual benefit association can be expelled, specific charges in writing must be preferred, all rules must be strictly adhered to, and in absence of full and strict proof, every presumption is against the party claiming a forfeiture. Fisher v. Keane, L. R. 11, Ch. Div., 353; Labowchere v. Earl of Whorncliffe, L. R. 13; Ch. Div., 346; Commonwealth ex rel v. Guardians etc., 6 S. & R. Pa., 469; Supreme Lodge v. Zalke, 129 Ill., 298; Supreme Lodge v.Dahlberg, 138 Ill., 508; State ex rel. v. Adams, 44 Mo., 570; Schue er v. Grand Lodge, 45 Minn., 256.
Expulsion without notice is “abhorrent to all reason and void." Wechtel, Admx. v. The Nat. W. & O. B., Scy., 84 N. Y., 28; People ex rel. v. Fire Dept. of Detroit, 31 Mich., 458; Miner v. Mich. Mut. Assn., 63 Mich., 338. Expulsion except by strict compliance with rules-is null. State ex rel. v. Carteret Club., etc., 40 N. J. L., 295; Vivar v. Knights of Pythias, 52 N. J. L., 455; Wash. Ben. Scy. v. Bacher, 20 Pa. St., 425.
*376 An association may be estopped by its action from claiming that the deceased was not a member in good standing, at the time of his death. Warrebold v. Grand Lodge A. O. W., 83 Iowa, 23; Nat., etc., Assn. v. Jones, 48 Ky., 110;
Upon a motion to direct a verdict, the court is not authorized to weigh the evidence. If ;here is evidence tending to sustain plaintiff’s ease on all points, no matter how slight, it must be submitted to the jury. Stewart v. The Toledo Bridge Co., 15 C. C., 601.