(161 App. Div. 67)

NIAGARA ALKALI CO. v. CHAMPION COATED PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. March 4, 1914.)

BAILMENT (§ 14*)—CONTRACT—LIABILITY OF BAILEE.

Plaintiff entered into a contract to sell defendant a two years' supply of muriatic acid in tank cars, and agreed to ship to defendant 500 empty carboys to remain in defendant's possession during the life of the contract without charge to be used for the storage of acid; the carboys to be returned at the end of the contract, and all not returned to be paid for. The carboys, while stored in a safe place by defendant, were carried away by an unprecedented flood. Held, that the contract merely made defendant a bailee of the carboys, and hence there was no liability for their loss, occurring through an act of God, for the provision as to payment for the carboys merely contemplated payment for those broken, and would not have allowed defendant to retain them upon payment of the agreed price.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 45–55; Dec. Dig. § 14.*]

Kruse, P. J., dissenting.

Submission of controversy between the Niagara Alkali Company and the Champion Coated Paper Company. Judgment for defendant.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Parton Swift, of Buffalo, for plaintiff.

Moot, Sprague, Brownell & Marcy, of Buffalo (Harry T. Klein, of Cincinnati, Ohio, of counsel), for defendant.

MERRELL, J. The admitted facts over which this controversy has arisen are as follows: The plaintiff is a domestic corporation, having its principal office at Niagara Falls, N. Y. The defendant is a foreign corporation, organized and existing under the laws of the state of Ohio, but doing business in the state of New York, having been duly authorized so to do upon compliance with the laws of this state. On July 15, 1911, at the city of Buffalo, N. Y., the parties hereto entered

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

into a contract in writing whereby the plaintiff, therein called the "seller," agreed to sell, and the defendant, therein called the "buyer," agreed to buy, a two years' supply of muriatic acid in tank cars. Said written contract contained the following provision:

"The seller will ship to buyer 500 empty carboys to remain in buyer's possession during this contract without charge and to be used by buyer for storage of muriatic acid. These carboys to be returned at end of contract term, and all carboys not so returned to be paid for by buyer at $2 each."

The plaintiff duly performed all the covenants and conditions of said contract on its part to be performed, including the shipment to defendant of the 500 empty carboys. The term of said contract ended on July 15, 1913, and on said date the defendant had failed to return 470 of the 500 carboys which plaintiff had furnished it, or to pay plaintiff therefor at the rate of $2 each. After the termination of said contract, plaintiff demanded of defendant the return of the 470 carboys or that defendant pay therefor at the rate mentioned, demanding of defendant the sum of $940, no part of which has defendant paid.

It is further admitted by the parties that it is not within the power of the defendant to return these 470 carboys, owing to the fact that while they were in the possession of the defendant, in a safe and proper place for their storage at its plant in Hamilton, Ohio, the same were, without any fault or want of care on the part of the defendant, washed away and destroyed by an unprecedented flood of such a character that it swept away a part of the defendant's plant as well as bridges, houses, large buildings, and surfaces of the streets, and destroyed many human lives, which flood was caused by a continuous and unprecedented rainfall. While the precise date of the destruction of these carboys does not appear from the submission agreement, it was conceded upon the argument that it occurred during the life of the contract between the parties, and that the flood occurred in March, 1913, and was the same general flood that visited the city of Dayton, Ohio, and other localities in the state with destructive results.

Plaintiff demands judgment herein against the defendant for the sum of $940, with interest thereon since July 15, 1913, with costs. Defendant demands judgment dismissing plaintiff's claim, with costs.

The plaintiff contends that, under the terms of its contract, defendant was in reality an insurer of the carboys loaned, and at the termination of the contract term had the alternative of either returning the carboys or paying plaintiff therefor at $2 each, and that, while defendant was prevented from returning them by reason of the flood, yet it had the other alternative of paying for them.

At first glance one might be impressed with the force of plaintiff's contention; but an analysis of the contract and the relations of the parties convinces me that such is not defendant's liability. To construe the contract under consideration, we must, if possible, search out the intention of the contracting parties at the time the contract was made. That both parties then contemplated the existence of the carboys at the end of the contract term cannot seriously be questioned. They were "to remain in buyer's possession during this contract." It cannot be claimed but that the parties contemplated their existence at the end of the con-

tract term. It is true provision for payment of such carboys as should not be returned was stipulated at $2 each. The carboys were of glass, and natural wear and breakage would be expected to levy some toll, and it was evidently to cover such loss that the $2 for each carboy not returned was provided. It surely must be conceded that the parties anticipated no such wholesale destruction by the elements as did occur. The destruction was by act of God, and occurred without fault of the defendant. No such catastrophe or destruction having been contemplated by the parties when the contract was made, the provision for the return of the carboys or payment of the $2 for each vessel not returned is unenforceable. The title to the carboys never passed to defendant. It would be absurd to claim that, under the terms of this contract, if the carboys had not been destroyed, defendant could have retained them by paying $2 each, and have successfully resisted repossession thereof by plaintiff. Clearly the parties contemplated the existence of the carboys at the end of the contract and their return to plaintiff, with allowance for such as might have been broken by ordinary use. I am unable to agree with plaintiff's interpretation of the contract as permitting defendant the alternative of returning the carboys or paying for them. I think no such alternative existed. The contract reads: "These carboys to be returned at end of contract term." Here we have a positive provision that the chattels bailed are to be returned to the bailor. They were to remain plaintiff's property, a condition quite at variance with the position now taken by plaintiff that the defendant had the option to retain them if he wished and pay for them at $2 each. Defendant had no such alternative. At the end of the contract term they were to be returned; defendant paying for such as were not so returned. The contract might have easily been so framed as to have permitted defendant the alternative of returning or paying for the carboys as it chose, but such evidently was not the intention of the parties. Therefore I do not think the numerous cases cited by plaintiff to the effect that the removal of one alternative does not relieve defendant from the performance of the one remaining, applicable to the situation here.

It seems to me that this contract is one of simple bailment for the mutual advantage of both parties. The bailment of the carboys was an inducement for the purchase of the acid in bulk. We must assume that the loan of the glass carboys in which to store the muriatic acid shipped to defendant in tank lots was a material consideration to defendant in some degree inducing the purchase of the acid, so that the bailment was one for the mutual advantage of both contracting parties, and the bailee, the defendant, was called upon to exercise only ordinary care in the preservation of the property bailed. It is conceded by the plaintiff that defendant kept the carboys in a safe and proper place of storage, and that while so stored, without fault or want of care on defendant's part, they were destroyed. The flood which wrought the havoc was unprecedented and attracted nation-wide attention at the time. The resulting destruction of property cannot but be considered as the act of God, within the usual meaning of that term. And when the destruction of these carboys occurred without fault on de-

fendant's part, and while it was in the exercise of ordinary care over them, defendant cannot be compelled to make good the loss. In other words, as bailee of the carboys, defendant, under well-settled principles of law, cannot be held to answer for the value of the property lost. If the contract had contained a provision for the contingency which actually occurred, the destruction of the carboys, then, if defendant had agreed to pay for them, doubtless it would have been liable, but no such contingency was contemplated or provided for by the parties.

Nor, for the reasons hereinbefore suggested, do I think it can be held liable under its special agreement to pay for the carboys not returned. I think the case comes well within the principle enunciated by Chief Justice Andrews in Lorillard v. Clyde et al., 142 N. Y. 456, at page 462, 37 N. E. 489, 491 (24 L. R. A. 113), where that learned jurist, in discussing the obligation of contracts, the performance of which is rendered impossible by inevitable accident, says:

"But it is now well settled that when performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation."

And again at same page:

"When the executory contract relates to specific chattels, and the subject-matter is destroyed without fault of the party, the implied condition arises and excuses performance."

It cannot be doubted but that the parties to the contract under consideration assumed, as the basis of the agreement, the continued existence of the carboys. Their destruction relieved defendant from performance. Whitehead v. Vanderbilt, 10 Daly, 214; Keystone Watch Case Co. v. Romero, 36 Misc. Rep. 381, 73 N. Y. Supp. 636.

I therefore am of the opinion that the defendant is entitled to judgment in this action against the plaintiff, with costs. All concur, except KRUSE, P. J., dissenting in a memorandum.

KRUSE, P. J. (dissenting). The defendant seeks to avoid liability for the glass carboys not returned upon the ground that the carboys were destroyed by an unprecedented flood and without any fault upon its part. I think that would be so but for the terms of the express contract under which the carboys were delivered to the defendant.

The plaintiff agreed to sell, and the defendant to buy, a certain quantity of muriatic acid, covering a certain period of time, and to furnish the defendant free of charge a certain number of carboys for storing muriatic acid, and at the end of the contract term the defendant agreed to return the carboys or to pay therefor at the rate of $2 apiece for such as were not returned. The defendant has done neither, although the contract term has expired.

While I do not think the defendant had the option under the contract of purchasing the carboys at $2 apiece, I am of the opinion that it was intended that defendant should be liable absolutely for the value of the carboys at that rate for such as were not returned by the defendant.

The plaintiff's place of business was in this state, while that of the defendant was in Ohio. The carboys were placed in the exclusive possession of the defendant. They were of glass and breakable, and it might be very difficult for the plaintiff to show that a carboy was broken, lost, or destroyed through the fault of the defendant. The very purpose, as it seems to me, of providing for the return of the carboys, or in the alternative to pay therefor, was to avoid the difficulty of making the defendant liable under the ordinary rule applicable to bailments. It is true that it can be argued that the price at which a lost or destroyed carboy is to be paid for was to fix the measure of compensation in the event that there was a legal liability against the defendant, under the ordinary rules applicable to bailments. But, if that was intended, it would have been an easy matter so to provide in the contract, and not leave it to rest upon mere inference and implication.

While the unprecedented flood has made it impossible for the defendant to return the carboys, that affords no good reason, as it seems to me, from relieving it from the alternative promise to pay therefor.

I think judgment should be directed for the plaintiff.