PARSONS *vs.* HARDY & M'CORMICK.

A *common carrier*, in respect to the *time of delivery* of goods, is responsible only for the exertion of due diligence, and may *excuse delay in the delivery by accident or misfortune*, although not inevitable ; it is enough if he exerts due care and diligence to guard against delay.

The principle, upon which the extraordinary responsibility of common carriers is founded, does not require that that resposibility should be extended to the *time* occupied in the transportation : the danger of robbery or embezzlement by collusion or fraud, on the part of the carrier, has no application in such case.

Where a *common carrier* on the canals is prevented by the canals freezing up from accomplishing the whole voyage, he is bound to deliver the goods at the place to which he undertook to transport them, on the canal again becoming navigable ; but if the owner of the goods accepts them at the place where the voyage was interrupted by the ice, the carrier is discharged from further responsibility, and becomes entitled to a *pro rata* compensation for the transportation of the goods to that place.

THIS was an action of *assumpsit*, tried at the Tompkins circuit in December, 1832. The suit was brought to recover the price of the transportation of a quantity of merchandize from *Albany* to *Ithaca.* On the 19th November, 1831, the plaintiff received at *Albany*, on board a canal boat of which he was owner and master, a quantity of goods belonging to the plaintiffs, which he agreed in writing to deliver in good order at *Ithaca*, the plaintiffs paying him for the freight. He proceeded with his load until he arrived at the lock on the canal near *Montezuma*, which he was prevented from passing in consequence of the ice in the canal. Winter then setting in, he landed his load, and put it in the care of the lock tender, from whom the 'defendants received their goods, and transported them to *Ithaca*, at an expense of $6 per ton. The distance from Albany to Montezuma is 206 miles, and from the latter place to Ithaca, 47 miles. The evidence as to the weight of the defendant's goods, varied from 8 to 16 tons; and the price of transportation of goods from Albany to Ithaca, it was shown varied from $8,50 to $10 per ton. The defendants insisted that the plaintiff was not entitled to recover, because he had failed to deliver the goods *at Ithaca,* and proved

that another boat which left Albany at the same time with the plaintiff's boat, passed the lock notwithstanding the ice, and arrived in safety at Ithaca. The plaintiff then offered to prove that he was delayed on the canal, in consequence of his boat being run against by a scow near *Syracuse*, by which the bow was stove in, and he was obliged to stop and repair ; this evidence was objected to, and the objection sustained by the judge. The plaintiff then proved that he used all possible diligence to perform the voyage, from Albany to Syracuse, and from Syracuse to Montezuma. The judge charged the jury that the accident to the boat, although caused by misfortune and without fault on the part of the plaintiff, was no excuse for his delay, which nothing could excuse but the act of God or the enemies of the country ; and that if the plaintiff could have proceeded in his voyage with more speed than he did, he was responsible for all damages sustained by the defendants ; but if he proceeded with due diligence, save such delay as happened from the act of God, he was entitled to recover a *pro rata* compensation ; and after expressing the opinion that the preponderance of the testimony was with the defendants as to the quantity of the goods transported, he submitted the cause to the jury, who found a verdict in favor of the plaintiff for only the sum of *twenty-nine dollars.*

*Ben Johnson*, for the plaintiff, moved for a new trial. He insisted that the rule of law, that nothing but the act of God or of the enemies of the country would excuse a common carrier, was inapplicable to the time of performance. In respect to which, he contended, the question was whether the plaintiff had or had not been guilty of negligence. *Forward* v. *Pittard*, 3 *T. R.* 33. The evidence of the accident to the boat, therefore, ought to have been received, and the judge erred in instructing the jury that such accident, although caused by misfortune, and without fault on the part of the plaintiff, was no excuse for the delay. He also insisted, that by accepting the goods at *Montezuma,* the defendants released the plaintiff from a full performance of the contract, and became liable for a *pro rata* freight. *Welch* v. *Hicks*, 6 *Cowen,*

504. The judge also, he argued, erred in expressing his opinion upon the weight of the evidence. 9 *Cowen,* 577.

*J. A. Spencer,* for the defendants. The plaintiff as a common carrier, could not excuse his delay by any thing short of the act of God, or of the enemies of the country. 6 *Johns. R.* 160. 11 *id.* 107. 1 *T. R.* 27. The goods having been left at *Montezuma,* the plaintiff is entitled to compensation for transportation only to that place ; and the expense incurred by the defendants, in transporting the goods to *Ithaca,* was properly deducted. What deduction should be made on that account, was a question proper for the consideration of the jury ; and though this court should be of opinion that too large a sum was deducted, they will not for that cause grant a new trial ; nor will they grant a new trial because the judge expressed an opinion upon the weight of the evidence, if the verdict is warranted by the evidence. 5 *Wendell,* 257.

*By the Court,* SUTHERLAND, J. The plaintiff as a common carrier was responsible at all events for the final safety and delivery of the defendants' goods to them at Ithaca. Nothing could exonerate him from that responsibility but the act of God, or a public enemy ; but in respect to the *time of delivery,* he was responsible only for the exertion of due diligence. In this respect, common carriers stand upon the same ground with other bailees. They may excuse delay in the delivery of goods by accident or misfortune, although not inevitable, or produced by the act of God. It is sufficient, if they exert due care and diligence to guard against delay, if the goods are finally delivered in safety. The principle upon which the extraordinary responsibility of common carriers is founded, does not require that that responsibility should be extended to the time occupied in the transportation : the danger of robbery or embezzlement by collusion or fraud, on the part of the carrier, has no application here. The special contract or written agreement on the part of the plaintiff, to transport the defendants' goods to Ithaca, specified no particular time at which they were to be delivered there. It did

not therefore affect the plaintiff's duty or responsibility in that respect; he was to deliver them with all due diligence. The judge therefore erred in excluding the evidence offered by the plaintiff to excuse his delay in reaching Montezuma. He offered to show the delay was occasioned by his boat having been run against and injured by a scow, which rendered it necessary for him to stop and repair the injury. The judge excluded the evidence, on the ground that nothing but the act of God could excuse the delay. We are to assume, therefore, that the plaintiff would have shown that the accident occurred without any want of care or skill on his part. The ground on which the judge put his decision excluded all evidence of this description. It was conceded upon the argument that the delay would not have excused the defendants from their liability to the plaintiff for the transportation of the goods, if they had been delivered at Ithaca without any further delay. If the plaintiff has excused or offered to show a legal excuse for his delay in reaching Montezuma, he then stands upon the same ground as though there had been no delay whatever, as though the voyage had been accomplished with the utmost despatch; and it is conceded that the freezing of the canal at that point rendered it impossible for him to proceed farther. This was the act of God. If the defendants had not thought proper to receive their goods at Montezuma, it would have been the duty of the plaintiff to have delivered them at Ithaca, on the opening of the canal the ensuing spring. He was responsible for their final delivery in safety; but the defendants, by accepting the goods at Montezuma, discharged the plaintiff from all further responsibility, and became liable to pay him a *pro rata* compensation for their transportation to that point.

As to the quantity of goods, it appears to me, the view of the evidence taken by the judge was correct. The testimony on the part of the defendants upon that point certainly was the most direct and satisfactory. Additional evidence, however, upon this point, may probably be produced upon a new trial.

**New trial granted.**