## Case No. 4,858.

### The FLASH.

[1 Abb. Adm. 119.] [1]

District Court, S. D. New York.    Jan., 1848.

William Jay Haskett, for libellant.

[1] [Reported by Abbott Brothers.]

BETTS, District Judge. The court has already decided upon the demurrer in this cause, that the contract set up in the libel was one for the non-performance of which the libellant is entitled to a remedy in this court against the vessel herself.

It appears to me that the testimony adduced by the libellant upon the hearing substantiates the material allegations of the libel. The only important ground of defence upon the facts is, that there was no breach of the contract, but only a delay in its fulfilment, arising from "the act of God."

The facts shown in support of this defence are, that while the vessel was engaged in taking on board the cargo of brick, the master was injured by a fall, in consequence of which he died a few days afterwards. During the time he survived and remained on board the vessel, the physicians forbade the loading to go on, because of the injury likely to result from it to him in his enfeebled condition. He was carried round in the vessel, from the place she lay, to the foot of Hammond street, in this city, and there landed. Had the vessel returned to her previous station immediately after landing the master, she might, as the evidence shows, have completed her loading, and have conveyed the entire cargo to Brooklyn, its place of destination, without impediment from the weather; but she delayed several hours needlessly at Hammond street, and was in consequence frozen in at that dock, and thus prevented going on with the execution of the contract until after this suit was commenced. The libellant sent an agent to confer with the owner in respect to the completion of the contract, and on the first interview the owner manifested a disposition to continue and fulfil the undertaking entered into by the master; but upon the second application to him he positively refused to do so.

I do not think the short delay at Hammond street, although followed by the freezing in of the vessel, could have operated as a breach of the contract; and if the owner had proffered a fulfilment on his part, to be made as soon as the vessel could be extricated from the ice (Bowman v. Teall, 23 Wend. 306; Parsons v. Hardy, 14 Wend. 215), I should have regarded him free from liability as for a wilful neglect to perform it. Under the circumstances of the case, he would be entitled to a fair indulgence for time, both to replace the master and also to await the relief of the vessel from her confinement in the ice, had reasonable exertions been used by the owner to complete the undertaking for the vessel. Story. Bailm. § 545a.

But instead of thus offering to complete

the agreement as soon as performance should be within his power, the owner repudiated his obligation, and positively refused to fulfil it at any time. This refusal is the gist of the owner's defalcation, and properly subjects the vessel to the consequences of not performing the engagement made by the master. There was no vis major or inevitable accident which released the vessel from proceeding in a reasonable time to complete the undertaking. The owner having taken the ground that he would not perform that engagement at all, the libellant became entitled to proceed against the vessel, and to recover the damages incurred by reason of the violation of the contract already entered upon, and in part executed.

In respect to that portion of the cargo which was taken to the vessel and not received on board, the libellant may rightfully claim the reimbursement of the expenses of transporting it from his storehouse to the ship at the dock from which it was to be laden on board, as well as compensation for any injuries received by the cargo while it lay there awaiting the convenience of the vessel to receive it on board. It must from that time be considered as delivered alongside the vessel, and the shipment, so far as libellant was concerned, must be taken to have been then completed. But it not having been received on the vessel, there may be a question whether the ship is responsible for its value, or for the subsequent expenses incurred in removing or securing it ashore—the libellant having been expressly notified by the owner of the vessel that he repudiated the contract of the master for its transportation. If the libellant elected to leave his property exposed after that notice, the loss consequent upon that exposure must be recovered for against the owner personally, and not by action against the vessel in damages for the violation of his contract of carriage. The damages in that respect, for which the vessel is liable as consequent to the neglect to transport the whole cargo offered the vessel, would be the expense incurred by the libellant in procuring the delivery at the place of its destination of that portion which was left behind, as being incidental to the placing it under the control of the vessel; but not the consequential damages flowing from taking charge of it on land after it was abandoned.

The value of the brick laden on board the vessel, and not conveyed and delivered according to contract at the time the suit was instituted, is a lien upon the vessel, and must be satisfied by her. 3 Kent, Comm. 162, 218. I find it stated, upon the brief of the claimant's advocate, that that part of the cargo has since been delivered according to the agreement. This, however, does not appear upon the proofs, and accordingly the value of that part of the cargo must be inquired into upon a reference, and the libellant must receive compensation for the amount in the final decree.

Reference ordered.