## WORTH *vs.* EDMONDS.

A party is not at liberty to remain inactive, and recover damages, even of a party who has violated his contract.

Because one party violates his contract, the other is not at liberty entirely to disregard his own interest, and then seek full indemnity by the recovery of damages against the defaulting party.

In an action to recover damages for a breach of a contract by which the defendant, in December, 1864, agreed to tow, with his steamboat, the plaintiff's sloop and her cargo, from one place on the Hudson river to another, the judge instructed the jury, in substance, that although navigation was prevented by the act of God, yet the defendant was liable if, at the time he contracted, he had reason to apprehend that navigation would be thus prevented, before the contract was to be performed, as he should have provided for such a contingency, in the agreement. *Held* that if the freezing of the river excused the failure of the defendant to perform his contract, the charge was erroneous.

*Held, also,* that it was unnecessary for the defendant, in the agreement, to provide against such a contingency, as the law did it for him. And that if the evidence in regard to the condition of the river satisfied the jury that there was a sufficient cause, in such condition, to excuse the defendant from performance, he was entitled to a verdict

The freezing of a river is such an act of God as excuses performance of a contract to tow a vessel thereon; it being an act to which human agency does not contribute, and which it cannot control, and therefore for the consequences of which a party is not responsible.

Parties to contracts should be regarded as contracting with reference to those causes over which human agency has no control; and this element should be regarded as entering into the contract and excusing a failure to perform the same, with like effect as though such an exception was incorporated therein.

THIS is an appeal by the defendant from a judgment rendered in the county court of Columbia county, in favor of the plaintiff, for $191.53 damages and costs. The plaintiff brought the action to recover damages for an alleged breach of a contract by which the defendant, for the compensation of $50, agreed to go, on the night of December 10, 1864, from the village of Athens to New Paltz, with his steamboat, and tow to said village of Athens the plaintiff's sloop, loaded with stone. The plaintiff had previously agreed to transport the stone from New Paltz

Worth *v.* Edmonds.

to Athens for the Saratoga and Hudson River Railroad Company, for the sum of $150, and for that purpose had loaded said sloop with such stone. The defendant did not go down with the steamboat; and the plaintiff claimed that in consequence of such failure he was compelled to unload the stone, and was unable to deliver the same to said company, and thereby lost the said compensation, and was also compelled to lay up the sloop at New Paltz instead of Hudson, the usual place for wintering such boat, and was also necessarily subjected to additional expense in taking care of said boat during the winter. The defendant, upon the trial, endeavored to excuse his default in not going down with his boat, on the ground that a fall of snow and the formation of ice in the Hudson river, obstructed and rendered navigation impossible, and therefore he was unable to tow the plaintiff's boat. There was considerable evidence produced, upon both sides, bearing upon this question, much of which supported the defendant's theory, and a fair question of fact was raised for the determination of the jury; and they found a verdict in favor of the plaintiff.

*John Gaul, Jr.* for the appellant.

*J. C. Newkirk,* for the respondent.

*By the Court,* INGALLS, J. We are of opinion that the judgment cannot be supported, for several reasons.

*First.* The plaintiff was allowed to recover for loading and unloading the stone, which service was included in the $150 which he was to receive for transporting the stone. In the recovery, the plaintiff was allowed $100, which sum embraced all the charges attending such transportation, except the $50 which he agreed to pay the defendant for towing the sloop. It, therefore, appears quite clear, to my mind, that the plaintiff, in recovering the $100,

was allowed the expense of loading and unloading the stone; as it was for that service, in part, that such sum of $150 was agreed to be paid by the company. The plaintiff was also allowed to recover his expenses in going from Hudson to New Paltz by railroad, to look after the sloop, during the winter. I do not think the facts proved justified this charge. I do not discover any evidence showing that the plaintiff made any effort to procure any other boat to tow the sloop, either loaded or empty, to Hudson; and certainly without such proof he could not recover such expenses. It would seem that if the defendant was not excused, by the condition of the river, from going down and towing up a loaded boat, the plaintiff, with reasonable effort, could have procured his sloop to be towed to Hudson without load. A party is not at liberty to remain inactive, and recover damages, even of a party who has violated his contract. (*Costigan v. The Mohawk and Hudson Railroad Company,* 2 *Denio,* 609.) I am aware that the plaintiff testified that he could not get a boat to tow the sloop up, and could not sail her up, on account of the ice; but he entirely omits to show what, if any, effort he made to procure a boat to tow the sloop, or to run her up to Hudson by sail. Because one party violates his contract, the other is not at liberty entirely to disregard his own interest, and then seek full indemnity by the recovery of damages against the defaulting party. The law is not so unreasonable, or so unjust.

*Second.* We are also of opinion that the learned county judge erred in his instructions to the jury. He charged, among other things, as follows: " That if the jury find from the evidence that at the time of making the agreement the defendant had reason to apprehend that from the lateness of the season there was danger that ice might form in the river, he took that risk upon himself, and if prevented from fulfilling the contract in consequence of ice in the river, this furnished no defense to the defend-

Worth *v.* Edmonds.

ant." He also charged the following: " *That the act of God forms no defense, when, at the time of making the contract, the party had reason to apprehend that such act would occur before he could perform."* If the freezing of the river excused the failure of the defendant to perform his contract, which will be hereafter considered, I think the charge of the judge was erroneous. Both parties should be held to have contracted upon equal terms, in that particular. Neither had any control of the elements, and neither could know at what precise time navigation would be interrupted or suspended by the freezing of the river. I think the only reasonable rule to be enforced is, to regard parties as contracting with reference to those causes over which human agency has no control; and this element should be regarded as entering into the contract and excusing a failure to perform the same, with like effect as though such an exception was incorporated therein. Hence we conclude that it was unnecessary for the defendant, in his agreement, to provide against such a contingency, as the law did it for him. If the evidence produced by the defendant, in regard to the condition of the river at the time he was to tow the sloop, satisfied the jury that the cause was sufficient to excuse the defendant from performance, we are of opinion that the defendant should have prevailed in the action. It has been expressly held that freezing of a river or canal is such an act of God as excuses performance of a contract to transport thereon. (*Parsons* v. *Hardy*, 14 *Wend.* 215. *Bowman* v. *Teall*, 23 *id.* 307.) It is an act to which human agency does not contribute, and which it cannot control, and therefore for the consequences of which a party is not responsible. I think this proposition is sustained by authority. (*Merritt* v. *Earle*, 29 *N. Y. Rep.* 115. *Niblo* v. *Binsse*, 44 *Barb.* 54. *Wolfe, ex'r*, v. *Howes*, 20 *N. Y. Rep.* 197. *Fahy* v. *North*, 19 *Barb.* 341.) The law, while it rigidly requires performance of contracts, is not so unreasonable as to make a party responsible for

the act of God, which alone prevents such performance, wher' such party is chargeable with no fraud or negligence.

The counsel for the defendant relies upon the case of *Harmony* v. *Bingham,* (12 *N. Y. Rep.* 100.) This case is clearly distinguishable from the one at bar, in one material particular. In the case cited, the party was not confined to a particular route, and it appears that at the time the agreement was made, both parties knew that there was another route upon which the goods could have been transported, and hence the failing party was not absolutely prevented from performing his contract. In the case at bar, the sloop was to be towed upon the Hudson river, and not elsewhere. The case cited is in other respects inapplicable to the one under consideration. If, therefore, the jury were at liberty, from the evidence, to adopt the defendant's theory, which doubtless they were, we are clearly of opinion that the. judge erred, to the prejudice of the defendant's case, in instructing the jury, in substance, that although navigation was prevented by the act of God, yet the defendant was liable, if at the time he contracted he had reason to apprehend that navigation would be thus prevented before the contract was to be performed, as he should have provided for such a contingency, in the agreement. The jury may have come to the conclusion that the storm, and freezing of the river, was of itself a sufficient excuse for the defendant's failure to perform his agreement, yet may have felt bound to render a verdict against him on the ground that he omitted to provide, in his contract, against such a contingency. The case was unquestionably a proper one for the jury, as there was a conflict in the evidence.

We, therefore, conclude that, for the reasons assigned, the judgment must be reversed, and a new trial ordered, costs to abide the event.

[ALBANY GENERAL TERM, September 21, 1868. *Ingalls, Hogeboom* and *Peckham,* Justices.]