White *v.* Fuller.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM at New York, May 3, 1875. *Davis, Brady* and *Daniels,* Justices.]

(*a*) *S. C.,* reported very briefly, 4 *Hun,* 648. See 63 *N. Y.,* 422, where it *seems* the principle of above decision is affirmed.

---

## JOHN WHITE and others *vs.* JACKSON C. FULLER.

Where a miner of coal had permitted a coal commission firm to hold themselves out as agents for the sale of coal for him, and had consummated sales on credit, made by them; *held,* that he would be bound to a third party by a contract for the sale of coal on credit, made for future delivery by such agents; notwithstanding he had privately forbidden them to sell on credit or for future delivery.

But when there is a custom of the trade that an agent for the sale of coal has no right, unless specially authorized, to make a time contract extending over a long period, persons dealing with an agent are bound by such custom; and

a principal will not be liable upon such a time contract, made by an agent without special authority.

The agent of a coal miner, without authority, contracted to sell coal for future delivery, at a specified price. As soon as the principal was informed of the contract he notified the purchaser that he repudiated the same. At that time the market price of coal was as low as the contract price, and the purchaser might have bought the same quantity of coal at the same price. *Held,* that the purchaser was not entitled to damages for the failure to fulfil the contract; even if the agent had acted with authority.

The applicability of an abstract proposition to a case is a matter of judicial cognizance; and the refusal to charge requests, after all that a party is entitled to, upon the evidence, has been charged, is not error.

Although there be a change of relations between principal and agent, by which the latter, who was previously authorized to sell on credit, is positively prohibited to sell on credit, in future, such change of relations will not affect the rights of third persons who have dealt with the agent, as such, and with the knowledge of the principal. Such persons are entitled to notice of the change.

It is a well settled rule of law that a principal, as to third persons, is bound by contracts made on his behalf by one who holds himself out to be such agent, although in fact he is not, if the principal know of such assumption of authority, and permits it, without taking the steps to prevent its exercise to another's prejudice. *Per* BRADY, J.

APPEAL, by the plaintiffs, from a judgment in favor of the defendant entered upon the verdict of a jury.

The action was brought to recover damages for the alleged breach of a contract to deliver 6,000 tons of coal. The defendant was, in 1868, the operator of a coal mine, in Pennsylvania, and the firm of Chamberlain & Co. were commission coal merchants, in the city of New York. Upon the application of Chamberlain the defendant sent to the firm coal to sell on commission. The firm held themselves out as the sole agents in New York city for the sale of the defendant's coal. In May, 1868, on two occasions, the plaintiffs purchased some of the defendant's coal of Chamberlain & Co., giving their notes for the same, payable to the defendant's order. These notes were indorsed by the defendant, and paid. In August, 1868, the plaintiff entered into a contract in writing for the coal in question, with the firm, who exe-

cuted the same claiming to be agents for the defendant. In the latter part of that month, the defendant, being informed of the contract, gave notice that Chamberlain & Co. had no authority to make it, and refused to carry it out. The facts appear sufficiently in the opinion.

*W. W. Goodrich*, for the appellants.

*Joseph A. Welch* and *A. J. Vanderpoel*, for the respondent.

*By the Court*, BRADY, J. The plaintiffs purchased a quantity of coal from the defendant by a contract therefor, made with Chamberlain & Co., whom they claim to have been the defendant's agents, and fully authorized to make the sale. The testimony bearing upon the relations between Chamberlain & Co. and the defendant, as between themselves, is conflicting, the former stating facts and circumstances tending to prove the agency, and the latter, by facts, circumstances and denials of material statements, demonstrating that the alleged agency did not exist.

So far as the plaintiffs are concerned, the agency of Chamberlain & Co. depends upon their statements relating thereto, and by inference from transactions taken in connection with the circumstances attending the publication of a circular by Chamberlain & Co., claiming to be sole agents of the defendant. The transactions are purchases of coal from Chamberlain & Co. by them, which was sent from the defendant's mines, and for which he received payment through Chamberlain & Co.

The evidence is so conclusive, however, in favor of the defendant, on this question, that if the action were between him and Chamberlain & Co., the result must be in his favor. The letter of June 25, 1868, written to them by the defendant, and which was prior to the sale to the plaintiffs, is a positive prohibition against selling

coal on credit, and was a termination of an agency for any other than a sale for cash; even if such an agency had previously existed.

It does not follow, however, that the relations thus changed affect the rights of third persons who have dealt with the agent as such, and with the knowledge of the principal. Such persons are entitled to notice of the change. The rule is a familiar one, and was substantially charged when the cause was submitted to the jury, by the justice presiding.

The previous transactions by the plaintiffs were coupled with information of the circular, in which the firm of Chamberlain & Co. announced themselves as the sole agents for the sale of the defendant's coal in this city — a circular which had been sent to the defendant, and was received by him and its receipt acknowledged. There was also proof that the circular was posted in his office at the mines, and he did not deny positively that such was the fact; nor does any witness called by him, except so far as it may be accomplished by a statement that the witness did not see it there.

It is not necessary to say, perhaps, that it is a well settled rule of law that a principal, as to third persons, is bound by contracts made on his behalf by one who holds himself out to be such agent, although in fact he is not, if the principal know of such assumption of authority, and permits it without taking the means to prevent its exercise to another's prejudice.

It is equal, quite so, to the ratification of an unauthorized act, if it be not superior, as evidence of original power. The plaintiffs had the right to rely on the fair inferences and just conclusions to be drawn from the circulars issued by Chamberlain & Co.; the knowledge of their issue and transactions, that is, purchases of the subject-matter of the agency from Chamberlain & Co., and their consummation by the defendant. Upon these elements there was scarcely any conflict, if indeed there

was any collision between the witnesses called in reference to them.

If, therefore, the case rested upon this issue, the duty of this court to the plaintiffs would be clear; but there is another and a controlling element to be considered. It is this. The defendant offered evidence to show that by a custom existing in reference to agencies for coal, the agent had not, except by special authority therefor, the right to make a time contract such as was made with the plaintiffs, that is, for the delivery of coal extending over a period of months; and this evidence was not met by the plaintiffs and overcome.

It may be said, perhaps, with propriety, that it was not at all contradicted, so slight is the answer made to it. This custom prevailing, the plaintiffs must be presumed to have dealt with reference to it. At least, existing in the trade, they are chargeable with notice of it. As is said by WRIGHT, J., in *Easton* v. *Clark*, (35 *N. Y.*, 232:) "The purchaser is bound to take notice whether the agent is departing from the usage of trade." "He is presumed to understand the restrictions and limitations imposed by the usage of trade upon a general agency, (*Story on Agency*, §§ 224, 225;) and when, in making a sale, the agent has departed therefrom the principal may repudiate the act." It was the duty of the plaintiffs, or incumbent upon them, to have ascertained whether or not the firm of Chamberlain & Co. had the special power to make the sale on time, which they did make — a fact which, it seems, they took no measures to determine. There is no pretence that they did. An examination of the charge shows that the case was submitted to the jury on the various phases of the law of principal and agent, and the rights and obligations of third persons which it was necessary should be explained to them, and that relating to the custom as well.

The jury having found for the defendant, we may assume that they considered him bound by the contracts of Chamberlain & Co. as his agents, acting within the scope of their authority, but that in regard to the plaintiffs' contract, they were acting without power to represent him, and that the plaintiffs were put upon notice of the application to it of the existing custom by the nature of the sale made. This conclusion justifies the verdict given on the issues created by the pleadings and evidence.

There is still another difficulty in the way of the plaintiffs' success in this action. The proof shows that the defendant, prior to the first of September, 1868, advised the plaintiffs, through Chamberlain, that he would not perform the contract.

Chamberlain testified that he told the plaintiffs that the defendant refused to sell the coal. The evidence also shows that at the time this communication was made there had been no rise in the price of coal. The plaintiffs could have purchased, therefore, at the same rates from others. This notice enabled them to protect themselves by another purchase, and they could not, on the authorities, relating to the subject, await the coming of events. It was incumbent on them to act, there being a reasonable time within which they might have bought the coal; and not having done so, they could not recover any damages resulting from their own inactivity. The law does not encourage demands thus arising. (*Hamilton* v. *McPherson*, 28 *N. Y.*, 72. *Baker* v. *Drake*, 53 *id.*, 211. *Dillon* v. *Anderson*, 43 *id.*, 231. *Worth* v. *Edmonds*, 52 *Barb.*, 40.)

The exceptions taken by the plaintiffs are valueless. The defendant had the right to show that in point of fact the firm of Chamberlain & Co. were not his agents, and to unite with it such evidence as he might have, to overcome the presumption arising from the facts and

circumstances out of which the plantiffs essayed to establish the fact that they were. The defendant had the right thus to contradict the evidence of the witness Chamberlain, by whose statements as a witness, the plaintiffs sought to prove the existence of an agency in fact. The denial of the agency was the underlying element of the defence, and the testimony to show that it was never created by arrangement between the defendant and Chamberlain & Co. was clearly competent.

The exclusion of the question put to Chamberlain, "In what capacity did you execute this contract with White, Fowler & Snow?" was proper. It was not for the witness to determine. It was for the court and jury, either or both, as the facts and circumstances required.

The requests to charge, which were not warranted by the testimony in the unqualified form in which they were made, were properly refused. The subjects embraced in them had been charged, but in connection with the proof given and to which they were necessarily subject in their application to the questions at issue.

It is not difficult to prepare in a controversy like this with involved questions a series of abstract requests, but their applicability to the case is a matter for judicial cognizance. It often happens that they are too unconditional for unqualified, absolute application. Such was the distinguishing trait of those refused in this case. It is a familiar rule that the proposition contained in a request must be in substance one which is properly evoked by the facts and circumstances proved, or the court is not bound to regard it. The charge as delivered contained, as before suggested, all the plaintiffs were entitled to according to the proofs and the issues, and the refusal of the court to grant further requests was just and proper.

The request to charge the jury that they would have the right to consider the first contract, in determining

the question as to whether the contract finally made was intended by the parties to be the contract of the defendant, was, in the view we take of this controversy, of no importance. The first contract was, in effect, a memorandum one only, and was abrogated by the second, which contained the agreement between the parties in full. The question whether the parties to it intended it to be the contract of the defendant was not at all in doubt. It was conceded that they did so intend, and it was wholly immaterial whether they did or not. The issues were whether Chamberlain & Co. of the one part were authorized to make any contract for the defendant, and, if yea, whether as to time contracts the plaintiffs were not bound by the custom on that subject. The refusal to grant the request was for this reason properly made.

There are other exceptions in the case which have not been particularly referred to here, but they are of no importance. They do not in any way affect or control the principles of law on which this appeal depends, and the matters to which they relate are not material elements in regard to such principles, or their application herein. They have no value, and it is deemed sufficient, therefore, to dispose of them in this general way. The plaintiffs' case seems to have been conducted, if we are to judge of it by the exceptions to evidence, on the theory that the defendant could scarcely answer successfully, without meeting its obligations, a contract made between the plaintiffs and him through the intervening agency of a person apparently authorized to act as such; and although there is much force in the position, a defendant may nevertheless be able to overcome it by proof of facts and circumstances warranted by the rules of law and evidence.

In this case the proof of custom was sufficient for the purpose, aside from that given, to put the plaintiffs in such legal relation to him by his notice that he would

not fulfil the contract, as to render them powerless in the premises.

The judgment should be affirmed with costs.(*a*)

Judgment affirmed.

(*a*) *S. C.*, reported briefly, 4 *Hun*, 631.