DAVID H. SILVER *et al.*, Respondents, *v.* ROBERT S. HALE, Appellant.

### June 26, 1876.

1. Where goods are to be transported by water, and, owing to the stage of the river, cannot be taken by water to their destination, the carrier is not bound to forward them overland; and, if there has been no want of diligence, is not answerable for delay if the goods finally arrive safely.

2. Evidence that no boats arrived at the point of destination of the goods during the season is competent, as tending to show that the default was not occasioned by the negligence of the carrier.

3. The time granted for argument is a matter within the discretion of the trial court; and this court will not interfere unless it is clear that that discretion has been abused.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Davis, Thoroughman & Warren,* for appellant.

*Slayback & Haeussler,* for respondents, cited : Steamboat Missouri *v.* Webb, 9 Mo. 193 ; Weatherford *v.* Farrar, 18 Mo. 474 ; Parsons *v.* Hardy *et al.*, 14 Wend. 215–218 ; Landes *v.* Pacific R. R. Co., 50 Mo. 346 ; Carpentere *v.* Rynders, 52 Mo. 281 ; Bailey *v.* Chapman, 41 Mo. 536 ; 21 Barb. 145 ; United States *v.* Stewart, 2 Biss. 412 ; Renford *v.* Smith, 52 N. H. 355 ; Collier *v.* Swinney, 16 Mo. 484–490 ; Conkey *v.* Milwaukee, etc., R. R. Co., Am. Law Reg. (1873) 365 ; Solomon *v.* United States, 19 Wall. 17 ;

Randall *v.* Kelsey, 46 Vt. 158 ; Gordon *v.* Lytle, 8 S. & R. 533 ; Mathews *v.* Coalter, 9 Mo. 705 ; Smith's Ld. Cas. 414 ; Conger *v.* Hudson River R. R. Co., 6 Duer, 375 ; Black *v.* Woodey, 39 Md. 194.

BAKEWELL, J., delivered the opinion of the court.

The plaintiffs allege in their petition that they are owners of the steamer " Tempest," and that, about April 4, 1869, defendant agreed with plaintiffs to ship on their boat, at St. Louis, to be transported to Fort Benton, at the rate of 4 1-2 cents per pound, about 49,000 pounds of freight ; that accordingly the agents of defendant at St. Louis sent aboard the " Tempest," at that point, 48,653 pounds of freight, to be transported according to the terms of said contract ; that the bills of lading were sent down to the boat with the freight, by the agents of defendant, to be signed by the agent of plaintiffs in triplicate, and contained the name "*Helena*, Mont. Ter.," instead of Fort Benton, as the point of destination of said goods ; that the agent of plaintiffs corrected two copies of said bill of lading by erasing " Helena " and inserting " Fort Benton," but, in the hurry of business, neglected to make the proper change in the third copy, retained by defendant ; that plaintiffs have fulfilled all the conditions of the contract on their part, and that defendant received and accepted said goods at Muscle Shell and Cow Island, and refused to pay plaintiffs the freight earned by them by carrying said goods. Plaintiffs ask that said bill of lading be reformed in accordance with the true intent of the parties, and for judgment of $2,189.38 freight earned by plaintiff under said agreement.

Defendant, in his answer, denies that there was any mistake in the bill of lading, and says the goods were, by contract, to be carried to Helena, and not to Fort Benton ; that the goods were purchased by him of Richardson & Co., in St. Louis, and by Richardson & Co. shipped on plaintiffs' boat, to be delivered to defendant at Helena, Montana Territory ; that plaintiffs did not deliver the goods at their des-

-tination, but at inaccessible way-points on the Missouri river, whence defendant had to transfer them to Helena, at a cost of $2,000. He also alleges that $500 of said goods were lost on the way, by the negligence of plaintiffs and neglect of their duty as common carriers; and also that, by reason of delay in carrying said goods, they depreciated in value $2,000, and asks judgment against plaintiffs for $4,500.

The replication denies the new matter in the answer.

The evidence tends to show that defendant agreed with plaintiffs to ship on their boat the goods mentioned in the petition, at 4 1-2 cents per pound, from St. Louis to Fort Benton; that Fort Benton is the highest point on the Missouri river reached by steamboats, and the regular landing for Helena, which is 150 miles inland, and reached from that point by wagons; that " Helena " was inserted in the bills of lading sent down to the boat by Richardson & Co., from whom defendant purchased the goods; that the bill of lading was in triplicate, and the words " Fort Benton " were, at the time, substituted for " Helena " on two copies of the bill of lading, but that, by oversight, this was omitted on the third copy, retained by Richardson & Co.; that the " Tempest" left St. Louis on April 7, 1869, for Fort Benton, with about 400 tons of freight; that she was obliged, by low water, to put off 175 tons of freight at Muscle Shell, about 325 miles below Fort Benton, and the rest of her freight at Cow Island, about 160 miles below Fort Benton; that she reached Cow Island about eighty days after leaving St. Louis; that this was a long trip, and that the distance from St. Louis to Fort Benton, about 3,100 miles, with good luck, is made often in fifty-five days. An effort was made to show that some delay was occasioned by mismanagement on the part of the captain of the " Tempest," but this was not shown. It was utterly impossible, when the " Tempest " reached that point, to get beyond Cow Island, the boat drawing twenty-four inches,

and there being only twelve inches of water, with a rocky bottom; though Fort Benton could have been reached had the boat arrived a few days earlier. The owners of the boat did the best that could be done under the circumstances. An experienced captain was sent up from St. Louis by railroad, as soon as the news that the boat was stopped at Muscle Shell was received by telegram. The goods were left at Muscle Shell as to a part of them, and the remainder at Cow Island. These points were places of safety, protected from the Indians, being stockade forts, and having proper store-houses to receive the goods. Every effort seems to have been made to procure overland transportation to Fort Benton, but, owing to danger from hostile Indians, the goods could only be sent at the risk of the forwarder, and, after negotiating in vain for some means of transportation which would be reasonably safe, they were of necessity left at these two river posts, to await the opening of navigation in the spring. Afterwards, but at what time does not appear, defendant came on from Helena and transported his goods from Cow Island and Muscle Shell overland. What the cost of this transportation was, what was the depreciation in value in the goods consequent upon this delay, are matters that do not appear from the evidence. Some of the goods seem to have been lost or wasted before arriving at Cow Island, or at that point; the exact amount of this loss does not appear, but it is not claimed to exceed $500.

The jury found damages for plaintiffs $1,725.44, and found for defendant, on his counter-claim, $500, and rendered a verdict for plaintiffs for $1,252.44.

Defendant moved for a new trial, and brings this cause here by appeal.

The instructions given are very lengthy, and we do not conceive it necessary to set them out in this opinion. Certain instructions asked by defendant were refused; we shall not set them out at length.

1. It is claimed by defendant that, if navigation had become

impossible, it was the duty of plaintiffs to forward these
goods by land at least to Fort Benton, if that was prac-
ticable ; and that it was practicable is shown, he claims, by
the fact that he got them through himself. And the court
erred, we are told, in refusing to instruct that plaintiffs, hav-
ing failed to fulfill their contract, were liable to defendant
for any depreciation in the value of the goods caused by
the delay, and for any outlay to which he was put in their
transportation.

That it was possible to transmit the goods to Fort Benton,.
and even to Helena, by land, is quite clear, because it was
done by defendant, but the evidence in the case shows that
the risk of total loss by hostile Indians was very great ;.
that no carriers could be got, with the utmost exertion on
the part of the plaintiffs, who would take the goods, except
at exorbitant prices, and at the risk of the shipper. The
plaintiffs deposited the goods in safe and proper custody, at
the highest accessible point on their route, to await the
re-opening of navigation. We think that the · evidence
shows that they did all they could, all that could be done;
and that they adopted the safe and prudent course. We
think that they were clearly entitled to *pro rata* compensa-
tion, unless the delay was caused by culpable negligence
before reaching Muscle Shell, and, that question having been
fairly submitted to the jury by the instructions, the jury
found that there was no culpable delay before reaching the
point of low water. ·

Where goods are to be transported by water, and a delay
is occasioned by ice, it has been held that the carrier is
neither liable to damages for account of delay, nor can he
be compelled to forward the goods by land. Unless there
has been a want of due diligence, no action for damages
will lie in such a case if the goods finally arrive safely:
*Pasrons* v. *Hardy*, 14 Wend. 215 ; *Hand* v. *Baines*, 4
Wheat. 204.

In the case at bar, the carrier was anxious to forward the
36

goods by land, and used extraordinary exertions to procure a conveyance, but could find none that was reasonably safe. He was not justified in running great risk of loss of the goods. If the owner chose to step in, take the goods from the place where they were arrested by a chance of navigation, and risk carrying them through hostile Indians, the fact that he had the good luck to get safely through does not alter the fact that he ran a great risk—a risk which he could lawfully take with his own property, but which no one else was bound to assume.

2. The court, against the objection of defendant, permitted evidence to go to the jury to the effect that no boat got through to Fort Benton during the season of 1869. We think such evidence was competent, as tending to show that the failure to reach Fort Benton was not caused by the negligence of the officers of the "Tempest." They could not be expected to do what no boat succeeded in doing. At any rate, the testimony did not prejudice defendant, since the only witness examined as to this point testified that there was no delay in reaching Cow Island, caused by any misconduct of any officers of the boat.

3. We are asked to reverse the case on the ground that the court refused to allow counsel more than ten minutes on each side to argue the case to the jury. This is a matter within the discretion of the court, and we cannot interfere unless it is clear that that discretion has been abused. We cannot say that there is anything to complain of in this action of the court. It would seem, indeed, that, as the close to the jury was with the other side, respondent was more likely to suffer from this ruling than appellant. But, though the case occupied the court for three days, and the evidence as preserved in the record is voluminous, few witnesses were examined, and there could not be much question about the facts. We do not think that it was a case which called for lengthy argument, and we shall not reverse the judgment on this ground.

We have carefully read the whole record, and we cannot see that any substantial error was committed calculated to prejudice the rights of defendant. The verdict and judgment were for the right party, and the verdict was not excessive. The judgment of the circuit court is affirmed. All the judges concur.