BUFFALO AND LANCASTER LAND COMPANY, Appellant, v.
BELLEVUE LAND AND IMPROVEMENT COMPANY, Respondent.

1. APPEAL — FORM OF ORDER OF REVERSAL BY APPELLATE DIVISION.
The form of an order of the Appellate Division reversing a judgment and
granting a new trial is not material with respect to showing whether or
not the reversal was upon the facts where there are no disputed questions
of fact.

2. CONTRACT — BREACH OF COVENANT TO OPERATE ELECTRIC STREET
RAILROAD. An agreement by the vendor of land, as a part of the con-
sideration of its sale, to construct an electric street railroad upon the prop-
erty and to run cars thereon "as often as once every half hour from 7
A. M. to 8 P. M. each day, as such street railroads are usually run," is not
violated so as to entitle the purchasers to rescind the contract by the fact
that on certain days during a winter of unusual severity there was a fail-
ure to run cars at the times named on account of heavy snows, the inter-
ruptions not being due to any omission on the part of the vendor, which
operated the road on the days in question as similar roads in the vicinity
were operated.

*Buffalo & Lancaster Land Co.* v. *Bellevue L. & I. Co.*, 32 App. Div. 529,
affirmed.

(Argued November 19, 1900; decided January 8, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
August 8, 1898, upon an order reversing a judgment in favor
of plaintiff entered upon a decision of the court on trial at
Special Term and granting a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Simon Fleischmann* for appellant. The findings of fact of
the trial court are conclusive upon this appeal, and as they
fully justified the conclusion of law, the judgment of the
trial court must stand. (Code Civ. Pro. § 1338; *Parker* v.
*Day*, 155 N. Y. 383; *Cunda* v. *Totten*, 157 N. Y. 281;
*Smith* v. *S. I. Co.*, 161 N. Y. 484; *Eames V. B. Co.* v.
*Prosser*, 157 N. Y. 289; *Petrie* v. *Trustees Hamilton Col-
lege*, 158 N. Y. 458; *Metcalf* v. *Moses*, 161 N. Y. 587; *Mar-*

*den* v. *Dorthy*, 160 N. Y. 39.) The covenant for the opera-
tion of the road at stated intervals on each day was absolute
and unqualified, and the further phrase " as such railroads are
usually run " refers to the general manner of operating the
road, not to the time or frequency of running cars which is
covered by that specific clause. (*Barhydt* v. *Ellis*, 45 N. Y.
107; Beach on Cont. § 718; *Ripley* v. *Larmouth*, 56
Barb. 21; *Holmes* v. *Hubbard*, 60 N. Y. 183; *Spofford*
v. *Pearsall*, 138 N. Y. 57; *Hoey* v. *Gilroy*, 129 N. Y.
132; *C. & T. S. R. R. Co.* v. *T. T. S. Ry. Co.*, 149
N. Y. 51; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425;
*Cowles Co.* v. *Lowrey*, 79 Fed. Rep. 331; *Belden* v.
*Burke*, 72 Hun, 51; *Marvin* v. *Stone*, 2 Cow. 781.)
The failure to run the cars during the winter of 1894 and
1895 constituted a breach of the covenant that the road should
be operated. (Pomeroy on Spec. Perf. 2, § 2; *Murphy* v. *S.
S. Co.*, 82 Hun, 158; *Phillip* v. *Gallant*, 62 N. Y. 256; *Nolan*
v. *Whitney*, 88 N. Y. 648; *Bracco* v. *Tighe*, 75 Hun, 140;
*Monteverde* v. *Bd. Suprs.*, 78 Hun, 267; *Glacius* v. *Black*,
50 N. Y. 145; *Woodward* v. *Fuller*, 80 N. Y. 312; Beach
on Cont. § 293; *N. Y. & N. E. R. R. Co.* v. *Providence*,
16 R. I. 746; *Little* v. *Banks*, 85 N. Y. 258; *Darrow* v.
*Cornell*, 12 App. Div. 604.) The difficulty of the operation
of the road, by reason of the heavy snow falls during the
winter in question, in accordance with the contract, was no
excuse for the failure of performance. (*Ward* v. *H. R. B.
Co.*, 125 N. Y. 230; *Beebe* v. *Johnson*, 19 Wend. 500;
*Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*,
25 N. Y. 272; *Cobb* v. *Harmon*, 23 N. Y. 148; *Wheeler* v.
*C. M. L. Ins. Co.*, 82 N. Y. 543; *Bigler* v. *Hall*, 54 N. Y.
167; *Jenninson* v. *Knox*, 15 Daly, 178; *Dermott* v. *Jones*,
2 Wall. 1; *C. T. Co.* v. *W., etc., R. R.*, 31 Fed. Rep. 440.)

*John G. Milburn* for respondent. All the findings are to
be taken into account in ascertaining the facts upon which the
questions reviewable by this court are to be determined.
(*Fielden* v. *Lahens*, 2 Abb. Ct. App. Dec. 111; *Green* v.

*Roworth,* 113 N. Y. 462; *Pratt* v. *Foote,* 9 N. Y. 463; *L. S. Nat. Bank* v. *B. C. Co.,* 51 Hun, 63; *Jerome* v. *Q. C. C. Co.,* 163 N. Y. 357; *Berger* v. *Varrelmann,* 127 N. Y. 281; *Adams* v. *Fitzpatrick,* 125 N. Y. 124; *Bennett* v. *Buchan,* 76 N. Y. 386; *Phelps* v. *Vischer,* 50 N. Y. 69; *Shotwell* v. *Dixon,* 163 N. Y. 43.) The contract of March 1, 1893, is not an absolute and unqualified agreement to run cars every half hour from seven A. M. to eight P. M. each day under all conditions and circumstances. (*D., L. & W. R. R. Co.* v. *Bowns,* 58 N. Y. 573; *Russell* v. *Allerton,* 108 N. Y. 288; *Stupenhorst* v. *Wolff,* 3 J. & S. 25; *O'Brien* v. *Miller,* 168 U. S. 297; *Gillet* v. *Bank of America,* 160 N. Y. 555; *Morgan* v. *Mayor, etc.,* 160 N. Y. 516; *Dexter* v. *Norton,* 47 N. Y. 62; *Lorillard* v. *Clyde,* 142 N. Y. 456; *Stewart* v. *Stone,* 127 N. Y. 507; *Worth* v. *Edmonds,* 52 Barb. 40.) There was substantial performance of the contract as to the operation of the railroad. (*Miller* v. *Benjamin,* 142 N. Y. 613; *Hosley* v. *Black,* 28 N. Y. 438; *Pallman* v. *Smith,* 135 Penn. St. 188; *Shoemaker* v. *Acker,* 116 Cal. 239.)

O'Brien, J.  This is an action to rescind a contract for a breach by the defendant and to compel the latter to specifically perform certain alternative provisions thereof. The contract in terms, as is claimed, bound the defendant to do various things that it failed to do. (1) To build, maintain and operate an electric street railroad through certain lands which it conveyed to the plaintiff's grantors. (2) Failing in that, to accept a reconveyance of the lands, and to cancel a purchase-money' mortgage given by such grantors. (3) To refund to the plaintiff any sums of money paid on the mortgage or on the purchase price of the land. (4) To pay $5,000 liquidated damages for the violation of the agreement.

On the first day of June, 1892, the defendant agreed to sell and convey to several individuals named a tract of land containing about one hundred and eighteen acres, for the sum of $71,136, to be paid at times therein expressed in cash to the amount of about $18,000, when the defendant was to convey

32

to the purchasers the land by a warranty deed, and the purchasers were to secure the balance of the purchase money by bond and mortgage. The cash payments were made, the property conveyed by the defendant and the purchase-money mortgage delivered by the purchasers in accordance with the agreement. The defendant also agreed that an electric street railroad should be constructed, maintained and operated through the land from the railroad system in Buffalo to the village of Lancaster, the construction of the same to be commenced on or before July 1, 1892, and the road to be completed and in operation on or before May 1, 1893, and that such railroad should be maintained in good condition and operated until the land *should be sold.*

In February, 1893, the individual purchasers of the land under this contract became incorporated and the corporation thus formed is the plaintiff in this action. These individuals were about to convey the lands to the plaintiff, but as it was supposed that the defendant's covenant with respect to the street railroad was good only until the lands were sold, the two corporations on March 1, 1893, entered into another agreement in writing in which the defendant is described as the party of the first part, and the plaintiff as the party of the second part, the material parts of which are as follows : " That in consideration of the premises and the sum of one dollar, paid by the party of the second part to the party of the first part, and for other good and valuable considerations, the party of the first part agrees, in case the parties to said agreement of the second part shall make the conveyance hereinbefore recited, that an electric street railroad shall be constructed, maintained and operated connected with the street railroad system of the city of Buffalo, and running thence to the village of Lancaster, and that said railroad shall run over said land and in and along a certain street or highway one hundred feet wide as the same is now located, which street or highway runs in a direction parallel or nearly parallel to the northerly line of said land; that said street railway shall be completed and in operation on or before the first day of May,

1893; that said railway shall be maintained in good condition and in operation until the said land shall be sold by the party of the second part, and that after the completion of said railroad cars shall be run thereon for the convenience of passengers as often as once every half hour from 7 A. M. to 8 P. M. each day, as such street railroads are usually run, until said land is sold.   The party of the first part further covenants that in case said street railway shall not be constructed, maintained and operated as hereinbefore provided, the said party of the first part will, at the request of the party of the second part, take back the said land, provided said land shall be free and clear from all liens and incumbrances, except a mortgage made by the parties to said agreement, of the second part, to the party of the first part, to secure the payment of the sum of fifty-five thousand five hundred and eighty ($55,580) dollars, which mortgage bears even date herewith, and except also taxes and assessments levied or assessed thereon since the first day of June, 1892, and except also any incumbrances upon said land or any defects in the title thereto of the party of the second part which existed at the time of the delivery of the deed to the parties to said agreement of the second part; and thereupon the party of the first part will repay to the party of the second part all money which has or may be paid to the party of the first part pursuant to the terms of said agreement, and all moneys which may have been paid on said mortgage or the bond to secure which the same is given, and all moneys which may have been paid on account of taxes and assessments levied or assessed upon said premises since the first day of June, 1892, and will pay to the party of the second part the further sum of five thousand ($5,000) dollars which it is hereby agreed shall be full liquidated damages for the breach of the foregoing covenant for the construction, maintenance and operation of said street railway, and the party of the first part will thereupon, at the request of the party of the second part, discharge said mortgage."   The court found, and it is undisputed, that the defendant built the railroad and put it in operation, and that it was operated down to the time of the

trial, except during the winter of 1894–5, as to which period a special finding was made in the following words :

" That during the whole or a substantial part of the period elapsing from December 1, 1894, to April 1, 1895, cars were not run on the said electric street railway as often as once every half hour from 7 A. M. to 8 P. M. of each day, and that during said period there was a substantial failure to run cars on said electric street railway on the days and at the times and intervals required by said contract set forth in the above ninth finding of fact; that the winter of 1894 and 1895 was of unusual severity, and the failure to run said cars over or on said railroad as aforesaid was caused and resulted from said railroad becoming blocked with snow and snow drifts, caused by heavy snow falls and high winds, rendering it practically impossible to run cars over said railroad while the said snow and snow drifts continued on the said railroad, and the same were removed from said railroad with the appliances and assistance usually and ordinarily employed for that purpose by street railroads, and when the same were so removed from said railroad the running of cars was resumed and continued, a car passing over said railroad once every half hour until the railroad became blocked again in the manner hereinbefore set forth."

The court further found that it was practically impossible for the defendant to operate the railroad during the winter of 1894–5 in such a way as to pass through the lands every half hour, and that the interruption of the regular time was not due to any omission on the part of the defendant or the parties operating the road, but to the heavy storms prevailing at those times; that the stoppage of the cars at those times was for the purpose of cleaning the snow from the track, and that during the time mentioned the road was operated as similar railroads were in the city of Buffalo. It was also found that since the end of the year 1893, up to the time of the trial, there was practically no market for the sale of the land embraced in the contract and that the plaintiff sustained on damage in consequence of the omission to run the cars

regularly every half hour at the times referred to, and lost no opportunity to sell the land by reason of such omission.

The trial court rendered judgment for the plaintiff for the relief demanded, which was the restoration of the purchase money of the land, so far as paid, and all money paid on the mortgage by the plaintiff; but on appeal to the Appellate Division the judgment was reversed and a new trial granted, and no statement appears in the order that the reversal was on the facts. The form of the order of reversal is not material in a case where there are no disputed questions of fact. (*O'Brien* v. *East River Bridge Co.*, 161 N. Y. 539; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Griggs* v. *Day*, 158 N. Y. 1; *Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166.) All the findings of the trial court stand in the case, and the only question is whether they sustain the judgment. If they do not, then it was properly reversed. The court found not only what was done by the defendant in the performance of the contract, but what was not done, and all of the findings must be read together, and when thus read they must show a breach of the contract on the part of the defendant in order to support the judgment for the plaintiff at the trial.

The agreement to run passenger cars on the road as often as once every half hour was not literally or absolutely performed, and the question is whether the omission in that respect constitutes such a breach of the defendant's contract as to give to the plaintiff the right to rescind and to demand from the defendant the restoration of the benefits received under it. We do not think that it would be a fair construction of the contract to hold that the defendant was absolutely bound to run a car every half hour each day under all circumstances and conditions, whether possible or not, or that an omission in that regard under the circumstances and conditions found was a breach of the contract to operate the railroad in the manner specified. The whole contract and its purpose and object must be brought into view and the language employed by the parties understood in a reasonable way. Neither party intended to be bound to do things that

were impossible. The construction for which the learned counsel for the plaintiff contends would be unreasonable and would place the defendant at the mercy of the elements, since it is well known that the operation of railroads is frequently interrupted by storms such as are mentioned in the findings in this case.

The accepted canons of interpretation are opposed to a construction that would visit upon the defendant all the consequences of a breach as specified in the agreement. (*Del., L. & W. R. R. Co.* v. *Bowns*, 58 N. Y. 573; *Russell* v. *Allerton*, 108 N. Y. 288; *O'Brien* v. *Miller*, 168 U. S. 287; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Horgan* v. *Mayor, etc.*, 160 N. Y. 516.) It is a well-settled rule of law that where a party by his own contract absolutely engages to do an act, it is his own fault and folly that he did not thereby provide against contingencies and exempt himself from responsibility in certain events. In such cases performance is not excused by inevitable accident, or other contingency, although not foreseen, or under the control of the party. When the contract is absolute the *vis major* is not an excuse for non-performance. (*Ward* v. *H. R. B. Co.*, 125 N. Y. 230; *Harmony* v. *Bingham*, 12 N. Y. 99.) But there are many contracts from which by their very nature a condition may be implied, that a party will be relieved from the consequences of non-performance in some slight particular, where the obligation is qualified, or when performance is rendered impossible without his fault, and we think the contract in question belonged to that class. (*Stewart* v. *Stone*, 127 N. Y. 500; *Dexter* v. *Norton*, 47 N. Y. 62; *Worth* v. *Edmonds*, 52 Barb. 40; *Lorillard* v. *Clyde*, 142 N. Y. 456; *Taylor* v. *Caldwell*, 113 Eng. Com. Law, 826; *C., M. & S. P. Ry. Co.* v. *Hoyt*, 149 U. S. 1; *Clifford* v. *Watts*, L. R. [5 C. P.] 577.)

In this case the covenant to run the cars every half hour was qualified, not only by the nature of the contract and the act to be performed, but by the use of the words, "as such street railroads are usually run." We are of opinion that there was no substantial breach of the agreement upon the

facts found at the trial, when they are all taken together, since the railroad *was* constructed, maintained and operated in conformity with the agreement when reasonably and fairly construed.

This conclusion renders it unnecessary to deal with another point argued by the learned counsel for the defendant, to the effect that even if there was a breach of the agreement to run cars every half hour, yet the alternative clause is conjunctive and could be invoked by the plaintiff only in case of omission on the part of the defendant, not only to operate, but to build and maintain. He contends that the clause could not come into operation unless the defendant failed to do *all* these things. This construction would seem, upon the bare statement of the proposition, without examination of the authorities cited, to be almost as unreasonable as that for which the plaintiff's counsel contends with respect to the scope and meaning of the obligation to run cars every half hour. But since it is of no importance in the case, in the view we have taken of the other question, it is not needful to consider it.

The order and judgment of reversal should be affirmed and judgment absolute ordered for the defendant on the stipulation, with costs.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN, VANN and LANDON, JJ., concur.

Order and judgment affirmed.